IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:22-cv-4022-BCW |
| | ) | |
| THE STATE OF MISSOURI; *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## EFFECTS OF H.B. 85 ON UNITED STATES MARSHALS
## LAW ENFORCEMENT EFFORTS IN MISSOSURI

I, Jonathan D. Jordan, being duly sworn upon my oath, do state and testify that:

1. I am employed by the United States Marshals Service (USMS) as the Presidentially Appointed United States Marshal for the Eastern District of Missouri and as so, have knowledge of the USMS operations in the Eastern District of Missouri. The statements in this declaration are based on my personal knowledge as well as information provided to me in the course of my official duties.

2. I have 42 years of law enforcement experience. Prior to becoming United States Marshal, I was the duly elected Sheriff of Cape Girardeau County Sheriff for twenty-five years. I am a past President of the Missouri Sheriff's Association and a graduate of the National Sheriff's Institute of Longmont Colorado. I have served as an undercover narcotic officer, chief of detectives, and supervisor of the Cape Girardeau County Major Case Squad. I also served on many state, local, and national law enforcement organizations.

1

## **Background on USMS Operations**

3. The USMS was the first federal enforcement agency in the United States. Federal Marshals have served the country since 1789, often in unseen but critical ways. The USMS occupies a uniquely central position in the federal justice system. It is the enforcement arm of the federal courts, involved in various federal law enforcement initiatives. Presidentially appointed U.S. Marshals, one for each federal judicial district, direct the activities of 94 districts. Approximately 3,738 Deputy U.S. Marshals and criminal investigators form the backbone of the agency. The duties of the USMS include protecting the federal judiciary, apprehending federal fugitives, managing, and selling seized assets acquired by criminals through illegal activities, housing and transporting federal prisoners, and operating the witness security program.

4. The USMS is the federal government's primary agency for fugitive investigations. The Marshals have the broadest arrest authority among federal law enforcement agencies. The Marshals aid state and local agencies in locating and apprehending their most violent fugitives. The USMS arrest, on average, 310 fugitives every day. The USMS task forces combine the efforts of federal, state, and local law enforcement agencies to locate and arrest the most dangerous fugitives. Task force officers are state and local police officers who receive special deputations with the USMS. While on a task force, these officers can exercise federal USMS authority, such as crossing jurisdictional lines. The USMS "15 Most Wanted" fugitive program draws attention to some of the country's most dangerous and high-profile fugitives. These fugitives tend to be career criminals with histories of violence, and they post a significant threat to public safety.

5. The USMS is the lead agency for 56 interagency fugitive task forces located throughout the United States, as well as seven congressionally funded regional fugitive task forces.

2

In 2020, the USMS led fugitive task forces resulting in the arrests of over 77,460 federal, state, and local fugitives, and cleared over 90,446 warrants.

6. In the State of Missouri, the USMS operates in two districts, the Eastern District (E/MO) and the Western District (W/MO). I am responsible for the USMS activities in the Eastern District of MO which generally covers the eastern half of Missouri and includes approximately 49 counties.

7. The E/MO Fugitive Task Force (EMOFTF) is divided into two different enforcement teams. The teams are: The Heartland Fugitive Task Force (HFTF), which consists of our southern office located in Cape Girardeau, Missouri and the Metro Fugitive Task force (MFTF) located in St. Louis, Missouri. The Metro Fugitive Task Force also has deputies detached to enforcement teams at the local DEA office, and Organized Crime and Drug Task Force (OCDEFT) Strike Force located in Maryland Heights, Missouri. Both these task forces are comprised of a combination of USMS Deputies, and officers from state, local, and other federal agencies. The task forces seek to apprehend individuals, some of whom may be wanted for federal firearm violations.

**Impacts of Missouri H.B. 85**

8. I understand that Missouri has enacted H.B. 85, which purports to nullify several categories of federal firearm laws and imposes penalties on state and local law enforcement agencies who enforce, or assist in the enforcement of, those federal laws. The USMS' duties include enforcing federal firearm laws with respect to fugitives. As discussed further below, H.B. 85 has had several negative impacts on USMS operations in E/MO.

9. EMOFTF is comprised of approximately 48 deputized federal, state, and local officers. We have 13 full-time TFOs on the MFTF. We also have 3 full-time TFOs in Cape (14

3

in STL and 3 in Cape). These TFOs have all been restricted at one time or another in various degrees from enforcing federal firearms laws. One agency, the Missouri State Highway Patrol, is not allowed to enforce the federal violations.

10. In FY2021, E/MO received 421 federal weapons related warrants from the U.S. Attorney's Office. These warrants related to felon in possession of firearm, or similar, charges that originated from arrests, executed by state and local officers, of subjects for state firearms violations. These charges were then referred to the U.S. Attorney's Office for federal indictments. E/MO also had 320 weapons related warrants stemming from supervised release violations and/or bond violations with an underlying charge of felon in possession. E/MO seized an additional 233 firearms during arrests of state and federal fugitives. Many of these were prosecuted federally. With the passage of HB-85, local task force officers are hesitant to participate in task force operations and seize firearms knowing that the subjects qualify for federal prosecution.

11. Since January 2020, EMOFTF recovered 393 firearms from prohibited persons and made 1,201 arrests for state and federal weapons offenses. In addition to the weapons arrests, E/MO task force arrested 470 additional persons for homicide, assault, and robbery, which all involved firearms.

12. Since the passage of HB-85, we have not lost any EMOFTF TFOs due to H.B. 85, but most of the EMOFTF TFOs have been restricted at one time or another, and in various degrees, from enforcing federal firearms violations. This hesitancy initially impacted fugitive operations in such areas as failure to share information that can be helpful in locating the fugitive; failing to act when a firearm is discovered at the scene; refusing to share information to determine if a firearm is stolen; and walking away from an operation when other task force members were actively involved in executing an arrest warrant. Of all the agencies that EMOFTF works with,

4

the Missouri State Highway Patrol still has not allowed their officers, who are part of the task force, to enforce federal firearms violations. However, some other task force officers have been allowed to resume normal operations by their agencies.

13. A specific incident where H.B. 85 caused problems for E/MO occurred when our Task Force was attempting to apprehend a federal fugitive in Cape Girardeau, Missouri. Our officers were on scene to arrest a federally wanted fugitive on a dangerous drugs warrant. They called for assistance with establishing an outer perimeter from Cape Girardeau Police Department, which has long been standard practice. The outer perimeter contains the fugitive inside of a dwelling or specific area and is important for protecting the safety of law enforcement officers and the surrounding community. The officers from Cape PD apologized and informed the USMS deputies that the Department had been ordered to leave and that it could not help any federal agency at this time. Except for an extreme emergency, that remains the policy of the Cape Girardeau Police Department.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Jonathan D. Jordan
United States Marshal
Eastern District of Missouri

5