# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | Case No. 2:22-cv-4022-BCW |
| THE STATE OF MISSOURI; *et al.*, ) | |
| Defendants. ) | |

## EFFECTS OF H.B. 85 ON UNITED STATES MARSHALS
## LAW ENFORCEMENT EFFORTS IN MISSOSURI

I, Micheal Vernon Stokes, being duly sworn upon my oath, do state and testify that:

1. I am an adult resident of Clay County, Missouri and I have firsthand knowledge of the matters set forth herein, including based on information provided to me in the course of my official duties. I have been employed by the United States Marshals Service (USMS), Western District of Missouri since October 2002 and have served continually in this district since that time. I currently serve as the Marshals Service Enforcement Supervisor for the federal district.

2. I was previously employed by the Kearney Nebraska Police Department as a Police Officer from November 1998 to October 2002. I directly supervise fugitive task force operations and the enforcement of all orders of the federal court as they pertain to arrest warrants for federal law violations where the USMS takes primary responsibility or by delegation from another law enforcement agency. The fugitive task force also assists state and local agencies in locating and arresting subjects wanted on state arrest warrants. I oversee all USMS enforcement program activities for the district. I have a Master's Degree in Public Affairs and a Master's Certificate in Emergency Management from Park University.

**Background on USMS Operations**

3. The USMS was the first federal enforcement agency in the United States. Federal Marshals have served the country since 1789, often in unseen but critical ways. The USMS occupies a uniquely central position in the federal justice system. It is the enforcement arm of the federal courts, involved in various federal law enforcement initiatives. Presidentially appointed U.S. Marshals, one for each federal judicial district, direct the activities of 94 districts. Approximately 3,738 Deputy U.S. Marshals and criminal investigators form the backbone of the agency. The duties of the USMS include protecting the federal judiciary, apprehending federal fugitives, managing and selling seized assets acquired by criminals through illegal activities, housing and transporting federal prisoners, and operating the witness security program.

4. The USMS is the federal government's primary agency for fugitive investigations. The Marshals have the broadest arrest authority among federal law enforcement agencies. The Marshals aid state and local agencies in locating and apprehending their most violent fugitives. The USMS arrest, on average, 310 fugitives every day. The USMS task forces combine the efforts of federal, state, and local law enforcement agencies to locate and arrest the most dangerous fugitives. Task force officers are state and local police officers who receive special deputations with the USMS. While on a task force, these officers can exercise federal USMS authority, such as crossing jurisdictional lines. The USMS "15 Most Wanted" fugitive program draws attention to some of the country's most dangerous and high-profile fugitives. These fugitives tend to be career criminals with histories of violence, and they pose a significant threat to public safety.

5. The USMS is the lead agency for 56 interagency fugitive task forces located throughout the United States, as well as seven congressionally funded regional fugitive task forces.

In 2020, the USMS led fugitive task forces resulting in the arrests of over 77,460 federal, state, and local fugitives, and cleared over 90,446 warrants.

6. In the State of Missouri, the USMS operates in two districts, the Eastern District (E/MO) and the Western District (W/MO). I am responsible for USMS enforcement activities in W/MO, which comprises the western half of Missouri and encompasses 66 of the 114 counties in the state to include the state capital in Jefferson City, and the major metro areas of Columbia, Springfield and Kansas City. E/MO comprises the eastern 48 counties and the largest metro area of St. Louis.

7. The W/MO operates one fugitive task force. The U.S. Marshals Midwest Violent Fugitive Task Force (MVFT), headquartered in Kansas City, Missouri, operates in conjunction with members of the Kansas City, Independence, and St. Joseph Police Departments; Jackson, Cass, Clay, Buchanan, Nodaway, and Clinton County Sheriff's Departments; Missouri State Highway Patrol; and other federal law enforcement partners. The Springfield Division partners with members of the Green County Sheriff's Office, the Christian County Sheriff's Office, the Springfield Police Department, and the Joplin Police Department. Officers from these state and local law enforcement agencies participating in the MVFT are federally deputized pursuant to USMS federal authorities. The MVFT is comprised of approximately 29 USMS deputies, and approximately 44 federally deputized task force officers from state and local law enforcement agencies within Western Missouri. On average, 5 task force officers work with the MVFT on a full-time basis and approximately 20 others are very active on a part-time basis.

8. The task force objectives are to seek out and arrest both state and federal fugitives charged with violent crimes, serious drug offenses, weapons violations, homicide, sex offenders, and other serious felonies. Many of these individuals are wanted for federal firearm violations or

federal supervised release violations for the same. The task force also provides direct support to law enforcement agencies in tracking down and recovering missing children.

9. USMS operations produce significant results in fighting violent crime. For example, since the summer of 2018, the USMS W/MO, Kansas City Office has conducted multiple enforcement operations resulting in the arrest of 2,568 fugitives.

10. The USMS takes the lead in serving all federal warrants sought by state and local law enforcement agencies that file cases directly with the U.S. Attorney's Office. Other federal agencies delegate federal warrants sought by their agency to the USMS for apprehension purposes. From 2017 to 2021, 1003 subjects were charged by the U.S. Attorney's Office in federal court with firearms related offenses and were processed through the USMS. The USMS W/MO apprehended 180 of these individuals through its task force work. While the W/MO apprehended 63 individuals in 2020 for federal firearms related charges, in 2021 the W/MO only apprehended 30 individuals for federal firearms related charges due to a significant drop in the number of federal firearms violation cases charged by the U.S. Attorney's Office. This is due to H.B. 85.

11. The USMS, by virtue of conducting its fugitive apprehension mission, also seizes large numbers of firearms from prohibited persons each year. In late 2018, as part of Project Safe Neighborhoods and the Public Safety Partnership initiative in Kansas City, as directed by the Department of Justice, the USMS W/MO stepped up efforts to seek out subjects with felony warrants who were actively committing crimes in the community and placing innocent citizens at risk of becoming victims of violent crime. This resulted in a dramatic increase of firearms seized at the time of the fugitive arrests. From 2017 to 2021, a total of 328 firearms were seized. Although the total number of firearms seized increased every year between 2017 to 2020, 95 firearms were seized in 2020, and only 51 firearms were seized in 2021. Although there are many

factors involved, including a reduction in TFOs and COVID, H.B. 85 is the only change that caused the significant drop in the numbers.

**Impacts of Missouri H.B. 85**

12. I understand that Missouri has enacted H.B. 85, which purports to nullify several categories of federal firearm laws and imposes penalties on state and local law enforcement agencies who enforce, or assist in the enforcement of, those federal laws. As discussed further below, H.B. 85 has had several negative impacts on USMS operations in W/MO.

13. The predominant number of federal firearms violation warrants generated in the W/MO come from the Kansas City Division and are related to investigations conducted in the Kansas City metro area. Prior to the passage of H.B. 85, the Kansas City Missouri Police Department and other local agencies routinely worked directly with the U.S. Attorney's Office to indict subjects for federal firearms offenses. If the officer presenting the case was not a task force officer for another federal agency, fugitive apprehension efforts are led by the USMS. Since the passage of H.B. 85, and more specifically, the penalty phase implementation on August 28, 2021, the filing of federal firearms offenses by local law enforcement agencies has slowed dramatically. From 2018 to 2021, the USMS W/MO received a total of 128 firearm related fugitive apprehension referrals from local law enforcement. While there were 46 referrals in 2020, there were only 15 in 2021, and only five such referrals since August 2021 due directly to the reduction in cases filed directly with the USAO by state and local agencies due to H.B. 85.

14. Six members of the Kansas City Missouri Police Department, Fugitive Apprehension and Arraignment Section, are specially deputized by the USMS and work on a daily basis with the USMS W/MO fugitive task force to apprehend violent offenders wanted throughout the metro area. Since the passage of H.B. 85, they too have experienced a significant "cooling

effect" in regard to their participation with the USMS task force if the subject sought is wanted for a federal weapons violation warrant. This approach is the same whether the case is one that is brought to the U.S. Attorney's Office by the Kansas Police Department or another agency. When the federal firearms offense is the primary charge for the warrant, and the USMS task force is working to apprehend the fugitive, these federally deputized officers are not allowed to assist the USMS.

15. The Kansas City Police Department lab, prior to the passage of H.B. 85, processed seized firearms to assist law enforcement agencies in identifying links between seized firearms and other crimes. After the passage of the law, the lab would not process firearms for DNA if in support of a federal agency conducting a federal firearms investigation. For example, the USMS had a felon in possession of a firearm case affected by this policy that we are unable to get a firearm in possession of the ATF processed for DNA. The subject is in custody on a federal probation violation and felon in possession of a firearm.

16. On September 5, 2021, a Missouri State Highway Patrol Trooper stopped a vehicle for speeding in Buchanan County and determined that the driver was wanted on a USMS warrant for a federal weapons violation, which was issued out of the District of Arizona. The vehicle was registered in Arizona and the driver did not have ties to Missouri, but instead was just passing through. The Trooper did not arrest the subject and instead released him at the scene believing that his department prevented him from making an arrest on the federal arrest warrant for the firearms violation. The USMS W/MO was not contacted on the date of this stop and did not receive a request for assistance. The USMS only learned of the vehicle stop after the fact, and by happenstance. The USMS then had to divert resources toward apprehending the individual and conducting a local investigation to determine if the subject was still in the local area or was

"passing through." The subject was apprehended by local law enforcement in Arizona approximately one month later. Although the Highway Patrol later clarified that the arrest of a subject who has an outstanding federal firearms warrant was not prohibited if randomly encountered during their duties, Missouri State Highway Patrol investigators that work routinely with the USMS W/MO on fugitive matters are still reluctant to participate in the actual investigation of a fugitive wanted on federal firearms warrant if it is not secondary to other primary charges such as narcotics, assault, etc.

17. Since the passage of H.B. 85, the W/MO has experienced varying levels of participation in task force operations by local law enforcement. First, some TFOs have stepped away from all fugitive operations related to the execution of an arrest warrant for a federal firearms offense at the outset. Second, as it relates to state or federal convicted felons, TFOs have initially participated in fugitive operations; however, when a firearm is discovered, some TFOs have reduced their level of participation, including immediately disengaging from the operation. Third, for non-firearm related fugitive operations, TFOs may initially participate in the fugitive operation, but depending on the developments at the scene, including the discovery of a firearm, TFOs have disengaged while execution of the arrest warrant is in process. This creates grave security issues within the context of the operation for other task force members.

18. As members of the USMS W/MO management team routinely visit with heads of the local law enforcement agencies in the district, a prevailing theme over the past year, since the passage of H.B. 85, has been one of a "wait and see" approach to joining the USMS task force due to the uncertainty of civil liability they could potentially face if involved in the enforcement of federal firearms violation warrants. This has negatively impacted recruitment efforts for the task force, to the detriment of the task force's overall effectiveness.

19. In conclusion, I believe that H.B. 85 constitutes a threat to public safety in Missouri, because it interferes with USMS' responsibility to apprehend fugitives, including violent offenders, and because it limits the information and resources available to USMS in performing those duties.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Mike Stokes
Deputy United States Marshal
Western District of Missouri