**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:22-cv-04022-BCW |
| | ) | |
| THE STATE OF MISSOURI, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1)**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION.................................................................................................................1

LEGAL STANDARD ............................................................................................................2

ARGUMENT ......................................................................................................................2

    I.   The Federal Government Lacks Standing. .................................................................2

        A.  The federal government cannot satisfy the injury-in-fact requirement. .........................2

        B.  The federal government cannot satisfy the causation requirement. ..............................7

        C.  The federal government cannot satisfy the redressability requirement. .......................9

    II.  The Federal Government Lacks a Cause of Action............................................................11

CONCLUSION...................................................................................................................15

CERTIFICATE OF SERVICE................................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Sandoval*,
   532 U.S. 275 (2001) ................................................................................................ 12

*Armstrong v. Exceptional Child Ctr., Inc.*,
   575 U.S. 320 (2015) ...................................................................................... 12, 13, 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................. 2

*Briscoe v. Bank of Commonwealth of Kentucky*,
   36 U.S. 257 (1837) ................................................................................................... 8

*California v. Texas*,
   141 S.Ct. 2104 (2021) .............................................................................................. 8

*Carlsen v. GameStop, Inc.*,
   833 F.3d 903 (8th Cir. 2016) .................................................................................... 2

*Church v. Missouri*,
   913 F.3d 736 (8th Cir. 2019) ................................................................................... 14

*Cross v. Fox*,
   23 F.4th 797 (8th Cir. 2022) ............................................................................... 2, 14

*Denver & R.G.R. Co. v. United States*,
   241 F. 614 (8th Cir. 1917) ....................................................................................... 12

*Digital Recognition Network, Inc. v. Hutchinson*,
   803 F.3d 952 (8th Cir. 2015) ............................................ 2, 5, 6, 8, 9, 10, 11, 12, 14

*Ex parte Young*,
   209 U.S. 123 (1908) ................................................................................................. 14

*Franklin v. Massachusetts*,
   505 U.S. 788 (1992) ................................................................................................. 11

*Freedom From Religion Foundation, Inc. v. Mack*,
   4 F.4th 306  (5th Cir. 2021) ..................................................................................... 14

*Green v. Mansour*,
   474 U.S. 64 (1985) ................................................................................................... 14

*Hanch v. K. F. C. Nat. Mgmt. Corp.*,
   615 S.W.2d 28 (Mo. 1981) ...................................................................................... 11

*Hildene Cap. Mgmt., LLC v. Arvest Bank,*
    No. 14-1110-CV-W-ODS, 2015 WL 12781221 (W.D. Mo. July 16, 2015) ............................ 13

*Hillsborough v. Cromwell,*
    326 U.S. 620 (1946) ............................................................................................................ 6

*Hodak v. City of St. Peters,*
    535 F.3d 899 (8th Cir. 2008) ............................................................................................ 6

*Hope Clinic v. Ryan,*
    249 F.3d 603 (7th Cir. 2001) ............................................................................................ 7

*June Med. Servs. LLC v. Russo,*
    140 S. Ct. 2103 (2020) ...................................................................................................... 6

*Kulkarni v. Wolf,*
    503 F. Supp. 3d 908 (W.D. Mo. 2020) ............................................................................ 13

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ............................................................................................................ 9

*Monsanto Co. v. Geertson Seed Farms,*
    561 U.S. 139 (2010)…………………………………………………………………..6

*Murphy v. Nat'l Collegiate Athletic Ass'n,*
    138 S. Ct. 1461 (2018) ...................................................................................................... 12

*Muskrat v. United States,*
    219 U.S. 346 (1911) ............................................................................................ 1, 3, 4, 5

*N. California Power Agency v. Grace Geothermal Corp.,*
    469 U.S. 1306 (1984) ........................................................................................................ 6

*New York Times Co. v. Sullivan,*
    376 U.S. 254 (1964) ............................................................................................................ 1

*Nken v. Holder,*
    556 U.S. 418 (2009) ............................................................................................................ 9

*Ohlendorf v. United Food & Com. Workers Int'l Union,*
    883 F.3d 636 (6th Cir. 2018) ............................................................................................ 15

*Okpalobi v. Foster,*
    244 F.3d 405 (5th Cir. 2001) ............................................................................................ 5

*Pennhurst State Sch. & Hosp. v. Halderman,*
    465 U.S. 89 (1984) ............................................................................................................ 1

iii

*Pennsylvania v. New Jersey*,
   426 U.S. 660 (1976) ............................................................................................... 3

*Printz v. United States*,
   521 U.S. 898 (1997) ............................................................................................... 7

*Raines v. Byrd*,
   521 U.S. 811 (1997) ............................................................................................... 5

*Riley v. U.S. Fire Ins. Co. & Trip Mate, Inc.*,
   2022 WL 390837 (W.D. Mo. Feb. 8, 2022)……………………………………....13

*Sackett v. EPA*,
   566 U.S. 120 (2012) ............................................................................................... 1

*Skelly Oil Co. v. Phillips Petroleum Co.*,
   339 U.S. 667 (1950) ............................................................................................. 15

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ................................................................................................. 5

*Susan B. Anthony List v. Driehaus*,
   134 S. Ct. 2334 (2014) .......................................................................................... 5

*Texas v. Florida*,
   306 U.S. 398 (1939) ............................................................................................. 12

*Touche Ross & Co. v. Redington*,
   442 U.S. 560 (1979) ............................................................................................. 15

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) .......................................................................................... 5

*United States v. California*,
   507 U.S. 746 (1993) ............................................................................................. 13

*United States v. California*,
   655 F.2d 914 (9th Cir. 1980) ............................................................................... 11

*United States v. Hartford Acc. & Indem. Co.*,
   460 F.2d 17 (9th Cir. 1972) ................................................................................. 13

*United States v. Koch Bros. Bag Co.*,
   109 F. Supp. 540 (W.D. Mo. 1953) ..................................................................... 13

*United States v. Students Challenging Regul. AgencyProcs.*,
   412 U.S. 669 (1973) ............................................................................................... 3

*Whole Woman's Health v. Jackson*,
    141 S. Ct. 2494 (2021) .................................................................. 8

*Whole Woman's Health v. Jackson*,
    142 S. Ct. 522 (2021) ...................................................... 1, 5, 6, 14

*Willingham v. Morgan*,
    395 U.S. 402 (1969) ................................................................... 7

**Statutes**

28 U.S.C. § 1331 ............................................................................ 2, 15

28 U.S.C. § 1345 ............................................................................... 15

28 U.S.C. § 1442 ................................................................................ 7

28 U.S.C. § 2403 ................................................................................ 9

Mo. Rev. Stat. § 27.060 ...................................................................... 9

Mo. Rev. Stat. §§ 1.410-.485 ................................................... 1, 5, 8, 15

**Constitutional Provisions**

U.S. Const. amend. XIV, § 5 .............................................................. 13

U.S. Const. art. I ............................................................................... 13

**Rules**

Fed. R. Civ. P. 12 ............................................................................ 1, 2

Fed. R. Civ. P. 65 .............................................................................. 15

Fed. R. Civ.P. 5.1 ............................................................................... 9

**Other Authorities**

11A Wright & Miller, Fed. Prac. & Proc. § 2941 (3d ed. 2004) ................................................. 15

John Harrison, *Ex Parte Young*, 60 Stan. L. Rev. 989 (2008)………………………………...14

1 John Norton Pomeroy, Jr., *A Treatise on Equitable Remedies* § 330 (1905)……………...…12

## INTRODUCTION

The Court should dismiss this case. Article III does not permit courts to hear "a proceeding against the government in its sovereign capacity" when "the only judgment required is to settle the doubtful character of the legislation in question." *Muskrat v. United States*, 219 U.S. 346, 361-62 (1911). Disregarding this and other considerable jurisdictional defects, the federal government seeks extraordinary relief—an injunction against the State of Missouri, the Governor, and the Attorney General—without even identifying a cause of action.

The federal government asks the Court to dispense with the normal cause-of-action requirement based on unfounded fears that the Second Amendment Preservation Act, Mo. Rev. Stat. §§ 1.410-.485, "impairs law enforcement efforts in Missouri" and "contravenes the Supremacy Clause of the United States Constitution." Doc. 1, at 1. Nothing could be further from the truth. The constitutionality of SAPA can be reviewed in the same way that virtually all of state tort law is: State-court defendants raise constitutional defenses before neutral judges sworn to follow the U.S. Constitution and, if necessary, appeal to the U.S. Supreme Court.[1]

True, some might prefer to be federal-court plaintiffs rather than state-court defendants under threat of significant financial penalties, but that preference is not constitutionally protected.[2] The federal government—which is not even subject to liability under SAPA—cannot seek to vindicate interests as a concerned bystander. Because the government cannot overcome these dispositive, threshold issues, the case should be dismissed.

---

[1] *See, e.g.*, *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 530 n.1 (2021); *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).

[2] *See Sackett v. EPA*, 566 U.S. 120 (2012) (that a plaintiff faces the possibility of substantial financial penalties does not guarantee a right of pre-enforcement review); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 123 (1984) ("That a litigant's choice of forum is reduced has long been understood to be a part of the tension inherent in our system of federalism.") (quotation omitted).

**LEGAL STANDARD**

Missouri moves to dismiss for lack of jurisdiction. Fed. R. Civ. P. 12(b)(1). For a facial attack under Rule 12(b)(1), the Court must accept "as true all facts alleged in the complaint," *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016), but it is not "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**ARGUMENT**

The Court should dismiss this case because it lacks jurisdiction—the federal government has neither standing nor a cause of action. *See, e.g.*, *Cross v. Fox*, 23 F.4th 797, 803 (8th Cir. 2022) ("Absent a private right of action to enforce [statute] in federal court for the relief sought, there can be no jurisdiction under 28 U.S.C. § 1331."); *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 957 (8th Cir. 2015) (standing is a "jurisdictional question").

**I.    The Federal Government Lacks Standing.**

"Article III of the U.S. Constitution limits the jurisdiction of the federal courts to 'Cases' and 'Controversies.'" *Digital Recognition Network*, 803 F.3d at 956-59 (citation omitted). "Standing is an essential and unchanging part of the case-or-controversy requirement." *Id.* (cleaned up). "To establish standing, a plaintiff must show that he has suffered an injury in fact that is fairly traceable to the challenged conduct of the defendant and will likely be redressed by a favorable decision." The federal government "must establish standing for each type of remedy sought, including declaratory and injunctive relief." *Id.* It cannot do so here.

A.   The federal government cannot satisfy the injury-in-fact requirement.

The federal government is not injured. The federal government had no apparent interest in challenging SAPA until after the Missouri Supreme Court heard oral argument in *City of St.*

*Louis v. State*, No. SC99290, where the Department of Justice participated as *amicus curiae*. It now argues that SAPA "stands as an obstacle" to federal law enforcement's "ability to defend and protect Missouri citizens," justifying its decision to sue Missouri. Doc. 1, at 6, 16. That is fatal to its standing because "settled doctrine" holds that a sovereign plaintiff lacks standing where it is "merely litigating as volunteer the personal claims of its citizens." *Pennsylvania v. New Jersey*, 426 U.S. 660, 665 (1976) (collecting cases). Indeed, "the judicial process" is not "a vehicle for the vindication of the value interests of concerned bystanders," even if the bystander is the United States. *United States v. Students Challenging Regul. Agency Procs.*, 412 U.S. 669, 687 (1973).

In fact, this is not an Article III case or controversy. No federal court can hear a case to determine the constitutionality of a statute that the sovereign defendant is not enforcing and has no direct authority to enforce. The fact that private parties may rely on the challenged statute in other litigation does not create a case or controversy against the sovereign. It simply shows that those other cases would be the proper cases for deciding the constitutionality of the challenged statute.

That is the holding of *Muskrat v. United States*, in which the Supreme Court considered a series of federal statutes affecting property rights of Indian tribes. 219 U.S. 346 (1911). The first statute gave a defined group property rights in certain tribal assets, including lands. Subsequent federal statutes reduced those rights. Congress then created a new cause of action allowing tribes and individuals injured by the subsequent statutes to sue the federal government "to determine the validity of [those subsequent] acts of Congress." *Id.* at 349-50.

The plaintiffs filed suit, just as Congress invited. They sought "to restrain the enforcement of [the challenged statutes] upon the ground that [they were] unconstitutional and

void." *Id.* at 349. There was no doubt that the challenged statutes injured the plaintiffs' property interests. Those statutes "attempt[ed] to increase or extend the restrictions upon alienation, encumbrance, or the right to lease the allotments of lands," and "increase[d] the number of persons entitled to share in the final distribution of lands and funds." *Id.* at 360.

Nevertheless, the Supreme Court reversed and remanded with directions to dismiss "for want of jurisdiction." *Id.* at 363. The Court held that the suit was not "a 'case' or 'controversy,' to which, under the Constitution of the United States, the judicial power alone extends." *Id.* at 361. The federal government, though "made a defendant," had "no interest adverse to the claimants." *Id.* at 361. The plaintiffs were not demanding that the government cease some enforcement action. They wanted "to determine the constitutional validity of this class of legislation." *Id.* But federal courts cannot entertain "a proceeding against the government in its sovereign capacity" when "the only judgment required is to settle the doubtful character of the legislation in question." *Id.* at 361-62. Such a judgment would not even have bound "private parties, when actual litigation brings to the court the question of the constitutionality of such legislation." *Id.* at 362. Thus, the suit was "not judicial in its nature within the meaning of the Constitution." *Id.*

Of course, the Court was willing to hear subsequent suits involving private parties. "The questions involved in this proceeding as to the validity of the legislation may arise in suits between individuals, and when they do and are properly brought before this court for consideration they, of course, must be determined in the exercise of its judicial functions." *Id.* But the interest in more quickly deciding "the constitutionality of important legislation" could not outweigh the Article III limitations on federal court jurisdiction.

*Muskrat* controls here. If the *Muskrat* plaintiffs could not sue a sovereign to challenge the constitutionality of laws enforced through private litigation, then neither can the federal

government here sue Missouri to challenge SAPA. A state official or state defendant that has no direct role in the enforcement of a challenged law is not a proper defendant. Nor does the fact that private parties will rely on those laws in other cases, even when those cases will be litigated in the sovereign defendant's courts. Indeed, that is especially so because, unlike the United States here, the *Muskrat* plaintiffs at least had cognizable injuries and an express cause of action.[3]

In addition to its problems under *Muskrat*, the federal government cannot show injury in fact. That's because it is not even liable under SAPA. Only "political subdivision[s]" and "law enforcement agenc[ies]" of the *State* are liable for civil penalties under SAPA. Mo. Rev. Stat. §§ 1.460.1-.470.1; *see* Doc. 1, at 18 (conceding SAPA "threatens *state and local* law enforcement agencies with lawsuits and significant monetary liability for any acts that could be portrayed as participating or assisting in the enforcement of federal laws") (emphasis added). "[M]onetary harms" undoubtedly "qualify as concrete injuries under Article III." *TransUnion*, 141 S. Ct. at 2204. But where, as here, there is "[n]o concrete harm," then there is "no standing." *Id.* at 2200.

Even accepting as true the federal government's allegations that but for SAPA, some Missouri state officials would resume participation in state-federal law enforcement partnerships, Doc. 1, at 16-20, that alone is insufficient for standing purposes. There must also be "a credible threat that private parties will enforce" SAPA against the federal government "if" these partnerships "resume[.]" *Digital Recognition Network*, 803 F.3d at 957 (citing *Susan B. Anthony*

---

[3] There is no doubt that *Muskrat* remains good law. The Supreme Court cites it in major cases about federal jurisdiction. *See, e.g.*, *Whole Woman's Health*, 142 S. Ct. at 532; *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021); *Steel Co. v.Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998); *Raines v. Byrd*, 521 U.S. 811, 819 (1997). So do the Courts of Appeals. The Fifth Circuit has held that "[t]he [standing] requirements … are entirely consistent with the long-standing rule that a plaintiff may not sue a state official who is without any power to enforce the complained-of statute." *Okpalobi v. Foster*, 244 F.3d 405, 426-27 (5th Cir. 2001) (en banc) (citing *Muskrat*). And the Eighth Circuit has cited *Okpalobi* with approval. *See, e.g.*, *Digital Recognition Network*, 803 F.3d at 957-58.

*List v. Driehaus*, 134 S. Ct. 2334, 2345-46 (2014)).  The complaint contains no allegation that private parties have or will enforce SAPA against the federal government.  Instead, the federal government alleges that SAPA will be enforced against *state* and *local* law enforcement agencies.  *See, e.g.*, Doc. 1, at 2, 14, 27.[4]

Even if SAPA imposed liability on the federal government (and it does not), that would independently favor denying injunctive relief here.  That's because the government would have an adequate remedy at law: Raising the same claims asserted here as affirmative defenses against SAPA in a private suit filed in state court.  *Cf. Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57 (2010) ("[A] plaintiff seeking a permanent injunction must … demonstrate … that remedies available at law … are inadequate to compensate for [an] injury[.]"); *N. California Power Agency v. Grace Geothermal Corp.*, 469 U.S. 1306, 1306 (1984) (Rehnquist, J., in chambers) ("A party seeking an injunction from a federal court must invariably show that it does not have an adequate remedy at law.") (citing *Hillsborough v. Cromwell*, 326 U.S. 620, 622 (1946)).  That includes defenses arising out of the Supremacy Clause: the Supreme Court recently stated in *Whole Woman's Health* that "whatever a state statute may or may not say, applicable federal constitutional defenses always stand fully available when properly asserted."  142 S. Ct. at 530 n.1 (citing U.S. CONST., Art. VI, cl. 2).  Suits against federal agencies—if SAPA

---

[4] To the extent the federal government claims third-party standing to assert the rights of state political subdivisions and law enforcement agencies subject to liability under SAPA, the government has waived third-party standing by failing to plead, raise, or assert it in the Complaint. *June Med. Servs. LLC v. Russo*, 140 S. Ct. 2103, 2117 (2020) (plurality opinion) (holding State waived third-party standing).  In any event, the government cannot assert third-party standing where, as here, it has not "suffered an injury in fact," has no "close relation" to state political subdivisions and law enforcement agencies, and these entities are not (and have not been) precluded from protecting their own interests in a private SAPA suit. *Hodak v. City of St. Peters*, 535 F.3d 899, 904 (8th Cir. 2008).  Indeed, a lawsuit by several of those entities challenging SAPA was recently heard by the Missouri Supreme Court, and a separate challenge by another political subdivision is pending in Missouri state court, so there is obviously no obstacle to those entities asserting their own perceived interests.

authorized any, which it does not—may also be removed to federal court. 28 U.S.C. § 1442(a)(1).

To be sure, the federal government has an "interest in the enforcement of federal law through federal officials." *Willingham v. Morgan*, 395 U.S. 402, 406 (1969). But it has *no* valid interest in compelling the enforcement of federal law through *state officials*. Nothing in SAPA precludes federal officials from using federal resources to enforce federal law. And the government concedes that Missouri officials "may lawfully decline to assist with federal enforcement[.]" Doc. 1, at 3 (citing *Printz v. United States*, 521 U.S. 898, 935 (1997)). Indeed, SAPA manifests what the Supreme Court approved in *Printz*: state officials (using state resources) cannot be required to enforce federal law. 521 U.S. at 912, 928-29 (holding that the Supremacy Clause "says nothing about whether state executive officers must administer federal law"); *id.* at 912 ("[S]tate legislatures are *not* subject to federal direction."); *id.* at 925 ("[T]he Federal Government may not compel the States to implement, by legislation or executive action, federal regulatory programs."). The government has thus not shown a concrete injury in fact.

B. The federal government cannot satisfy the causation requirement.

Nor can the federal government show that any injury it has suffered "is fairly traceable to the challenged conduct" of the defendants here. *Digital Recognition Network* controls. 803 F.3d at 956. "When a plaintiff brings a pre-enforcement challenge to the constitutionality of a particular statutory provision, the causation element of standing requires the named defendants to possess authority to enforce the complained-of provision." *Id.* at 957-58 (cleaned up). The government cannot make this showing here.

The State of Missouri does not "enforce" SAPA; it merely allows its judiciary to adjudicate private civil lawsuits brought under the statute. That is not a ground on which an Article III case or controversy can exist between the United States and Missouri. *See Hope Clinic v. Ryan*, 249

F.3d 603, 605 (7th Cir. 2001) (en banc) ("*Muskrat* ... held that Article III does not permit the federal judiciary to determine the constitutionality of a statute providing for private litigation, when the federal government (or its agents) are the only adverse parties to the suit.").

Given that "[a] state can act only through its agents," *Briscoe v. Bank of Commonwealth of Kentucky*, 36 U.S. 257, 318 (1837), an injunction against Missouri must operate by requiring some agent to take, or refrain from taking, some action. *See, e.g.*, *Whole Woman's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021) (per curiam) (noting "federal courts enjoy the power to enjoin individuals tasked with enforcing laws, not the laws themselves") (citing *California v. Texas*, 141 S.Ct. 2104, 2115-16 (2021)). But no state official named a defendant here possesses enforcement authority under SAPA.

In fact, private parties—not the State—enforce violations of SAPA. Mo. Rev. Stat. § 1.460.1 ("Any political subdivision or law enforcement agency … shall be liable to the injured party[.]"); *id.* ("Any person injured under this section shall have standing to pursue an action for injunctive relief[.]"); *id.* § 1.470.1 ("Any political subdivision or law enforcement agency … shall be subject to a civil penalty. … Any person residing in a jurisdiction who believes that an individual has taken action that would violate the provisions of this section shall have standing to pursue an action."); *id.* § 1.470.2 ("Any person residing or conducting business in a jurisdiction who believes that an individual has taken action that would violate the provisions of this section shall have standing to pursue an action for injunctive relief[.]"). Accordingly, "private litigant[s] alone seek[] to enforce private rights under the statute." *Digital Recognition Network*, 803 F.3d at 963.

The federal government thus lacks standing to sue the Governor and the Attorney General because the injury of which the government complains is not "fairly traceable" to either official.

*Id.* at 957. "The governor and attorney general do not have authority to enforce [SAPA], so they do not cause injury to [the federal government]. *The Act provides for enforcement only through private actions for damages*." *Id.* at 958 (emphasis added). "While the attorney general may intervene and defend the constitutionality of [SAPA] in a private damages suit, *see* 28 U.S.C. § 2403(b); Fed.R.Civ.P. 5.1; [Mo. Rev. Stat. § 27.060], the attorney general does not initiate enforcement or seek relief against a putative defendant." *Id.* The federal government's "injury is 'fairly traceable' *only to the private civil litigants who may seek damages under the Act and thereby enforce the statute against the [federal government]*." *Id.* (emphasis added).

An injunction "operat[es] *in personam*" and must be "directed at someone, and govern[ing] that party's conduct." *Nken v. Holder*, 556 U.S. 418, 428 (2009). So if the state's individual officers cannot be enjoined, then the State of Missouri cannot be enjoined either. The federal government cannot end-run those limits on the federal judicial power by suing the State as a nominal defendant while seeking relief that runs against the state officers that it cannot sue directly. The government thus cannot establish causation for Article III standing.

C. <u>The federal government cannot satisfy the redressability requirement.</u>

"For the same reasons" the federal government cannot satisfy the causation requirement for Article III standing, "it is not likely that [the federal government]'s injury would be 'redressed by a favorable decision.' " *Digital Recognition Network*, 803 F.3d at 958 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

*Digital Recognition Network* controls yet again. The federal government seeks to "permanently enjoin[ ] the State of Missouri, including its officers, employees, and agents, from implementing or enforcing" SAPA. Doc. 1, at 1, 4, & 27. But "the redressability prong is not met when a plaintiff seeks relief against a defendant with no power to enforce a challenged

statute." *Digital Recognition Network*, 803 F.3d at 958 (cleaned up). As explained above, neither the Governor nor the Attorney General have the authority to enforce violations of SAPA; the statutes "provides for enforcement only through private actions for damages." *Id.*

To the extent the federal government seeks an injunction "prohibiting the attorney general from intervening in a private damages action to defend [SAPA]'s constitutionality[,]" *id.*, that "would not redress [the federal government]'s injury." *Id.* That's because "[p]rivate litigants who assert violations of [SAPA] may defend the constitutionality of the Act, and they will not be constrained by any injunction that could be issued against the state officials in this action. A district court has no authority to enjoin the statute; an injunction would run only against the defendants in the case." *Id.*

The federal government's request for declaratory relief, standing alone, is also insufficient for redressability purposes. Doc. 1, at 26. The government may argue that a declaration of unconstitutionality "would substantially diminish the risk that [SAPA] would be enforced: private parties would be less likely to sue, the attorney general would not intervene to defend the Act, and a declaratory judgment would create precedent that binds federal and state judges in [Missouri]." *Digital Recognition Network*, 803 F.3d at 958 (quotation marks omitted). But "[t]his argument … overlooks the principle that it must be *the effect of the court's judgment on the defendant* that redresses the plaintiff's injury, whether directly or indirectly." *Id.* (quotation marks omitted). "A declaration that [SAPA] is unconstitutional would not redress [the federal government]'s injury by virtue of its effect *on the defendant officials.* Private litigants with rights to enforce the Act would not be the subject of any relief in this action, and any judgment would not oblige private litigants to refrain from proceeding under the Act." *Id.* Indeed, there is no "relationship between the state officials [named here] and potential private litigants under

[SAPA] that suggests the potential litigants would consider themselves bound to follow an order directed at the state officials." *Id.* at 959.

While "[a] declaration of [SAPA]'s unconstitutionality would provide [the federal government] with a favorable judicial precedent[,]" *id.* at 958, "if that measure of relief were sufficient to satisfy Article III, then the federal courts would be busy indeed issuing advisory opinions that could be invoked as precedent in subsequent litigation." *Id.* at 958-59. "If courts may simply assume that everyone (including those who are not proper parties to an action) will honor the legal rationales that underlie their decrees, then redressability will *always* exist." *Id.* at 959 (quoting *Franklin v. Massachusetts,* 505 U.S. 788, 825 (1992) (Scalia, J., concurring in part and concurring in the judgment)). As in *Digital Recognition Network*, "[b]ecause the defendant officials do not enforce [SAPA], a declaratory judgment would not meet the requirement of redressability." *Id.*

Nor would Missouri state courts adjudicating private SAPA suits be "bound by federal law to accept [this Court's] decision … on the meaning of the federal Constitution." *Id.* Although Missouri "courts might find persuasive the decisions of lower federal courts resolving federal constitutional questions, … there is no [Missouri] precedent requiring [Missouri] courts to treat such decisions as binding authority." *Id.* at 960. Quite the opposite. *Accord Hanch v. K. F. C. Nat. Mgmt. Corp.*, 615 S.W.2d 28, 33 (Mo. 1981).

## II.     The Federal Government Lacks a Cause of Action.

"The federal government, of course may sue a state in federal court under any valid cause of action," but it "must first have a cause of action against the state," just "like any other plaintiff." *United States v. California*, 655 F.2d 914, 918 (9th Cir. 1980). The federal government's sovereign status does not change the analysis. "When the state as plaintiff invokes the aid of a

court of equity, it is not exempt from the rules applicable to ordinary suitors." 1 John Norton Pomeroy, Jr., *A Treatise on Equitable Remedies* at 586, § 330 (1905). "[I]t must establish a case of equitable cognizance, and a right to the particular relief demanded." *Id.* Thus, a court cannot award relief unless it is convinced "that a cause of action cognizable in equity is alleged and proved," even when one sovereign sues another. *Texas v. Florida*, 306 U.S. 398, 411 (1939).

For this reason, the federal government must establish "a right of action given by some statute" or "a common-law right of action." *Denver & R.G.R. Co. v. United States*, 241 F. 614, 616 (8th Cir. 1917) (rejecting a claim by the federal government). This it cannot do. The federal government does not appear to rely on any constitutional or statutory cause of action—and rightfully so. No statute confers a cause of action on the federal government to sue Missouri for the claims here. *See Alexander v. Sandoval*, 532 U.S. 275, 287 (2001) (prohibiting federal courts from "[r]aising up causes of action where a statute has not created them"). And the Constitution does not create causes of action at all.

Instead, it empowers Congress to pass legislation creating causes of action in certain circumstances. *See, e.g.*, U.S. Const. art. I, § 8; U.S. Const. amend. XIV, § 5. The one constitutional provision at issue in this case, the Supremacy Clause, is no exception. "[T]he Supremacy Clause ... certainly does not create a cause of action," either expressly or impliedly. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 325 (2015). It "is silent regarding who may enforce federal laws in court, and in what circumstances they may do so." *Id.*

Because "[p]reemption is based on the Supremacy Clause," *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1479 (2018), the federal government has no cause of action under Count II of the Complaint either. Doc. 1, at 25-26. And the government concedes that "[t]he

doctrine of intergovernmental immunity also arises from the Supremacy Clause[,]" Doc. 1, at 6, so it lacks a cause of action under Count III of the Complaint too. *Id.* at 26.

The federal government has not identified a specific common-law or equitable cause of action that could support this suit. It seeks declaratory and injunctive relief, Doc. 1, at 26-27, but those are remedies, not independent causes of action.[5]

Nor is there an equitable cause of action for the federal government's Supremacy Clause claim. No precedent "hold[s] that considerations of federal supremacy can create a cause of action where none exists under state law or otherwise." *United States v. Hartford Acc. & Indem. Co.*, 460 F.2d 17, 19 (9th Cir. 1972) (affirming judgment against the federal government). Further, where a statutory scheme creates an independent enforcement mechanism (as SAPA does by providing for private lawsuits), that enforcement mechanism displaces any implied equitable cause of action, as the Supreme Court held in *Armstrong Exceptional Child Center*.[6]

To be sure, the federal government sometimes has an equitable cause of action that allows federal courts to "grant injunctive relief against state *officers* who are violating, or planning to

---

[5] *Accord Riley v. U.S. Fire Ins. Co. & Trip Mate, Inc.*, No. 4:21-CV-0192-DGK, 2022 WL 390837, at *4 (W.D. Mo. Feb. 8, 2022); *Kulkarni v. Wolf*, 503 F. Supp. 3d 908, 923 (W.D. Mo. 2020); *Hildene Cap. Mgmt., LLC v. Arvest Bank*, No. 14-1110-CV-W-ODS, 2015 WL 12781221, at *5 (W.D. Mo. July 16, 2015); *United States v. Koch Bros. Bag Co.*, 109 F. Supp. 540, 542-43 (W.D. Mo. 1953) ("An injunction will" not "restrain an act which does not give rise to a cause of action").

[6] In fact, the Supreme Court has already rejected the federal government's theory: The financial obligation to reimburse a federal contractor for expenses created by state law is not sufficient to create a federal cause of action. In *United States v. California*, a federal contractor managed oil drilling operations on behalf of the federal government. 507 U.S. 746, 748 (1993). California imposed taxes on the contractor, which the contractor paid under protest with funds provided by the federal government. *See id.* at 748-49. The federal government then filed suit against California, "argu[ing] it was entitled to recovery based on the federal common-law cause of action for money had and received." *Id.* at 749. The Supreme Court unanimously rejected that claim. "[T]he Government cannot use the existence of an obligation to indemnify [a federal contractor] to create a federal cause of action for money had and received to recover state taxes paid by [that contractor]." *Id.* at 754.

violate, federal law." *Armstrong*, 575 U.S. at 326-27 (emphasis added); *see Ex parte Young*, 209 U.S. 123, 163 (1908) (recognizing federal court's power to enjoin state executive officials "from commencing suits" in state courts). Even when "no one ... is arguing about sovereign immunity," *Ex parte Young* is relevant to "whether [the plaintiff] has an equitable cause of action." *Freedom From Religion Foundation, Inc. v. Mack*, 4 F.4th 306 311 n.3 (5th Cir. 2021) (Oldham, J.). But an *Ex parte Young* action cannot be brought against the State of Missouri. *See Green v. Mansour*, 474 U.S. 64, 68 (1985). It must be brought against a state *officer* charged with enforcing the challenged law, not the State itself. *See Church v. Missouri*, 913 F.3d 736, 747-48 (8th Cir. 2019). Here, neither the Governor nor the Attorney General possess "enforcement authority" under SAPA—it "provides only for private civil enforcement." *Digital Recognition Network*, 803 F.3d at 961; *see Whole Woman's Health*, 142 S. Ct. at 534 ("While *Ex parte Young* authorizes federal courts to enjoin certain state officials from enforcing state laws," plaintiffs were unable to "direct this Court to any enforcement authority the attorney general possesses in connection with [similar state law] that a federal court might enjoin him from exercising").[7]

The absence of a cause of action creates a jurisdictional problem in this case. *See, e.g.*, *Cross*, 23 F.4th at 803 ("Absent a private right of action to enforce [statute] in federal court for the relief sought, there can be no jurisdiction under 28 U.S.C. § 1331."). The government bases the Court's subject-matter jurisdiction on two statutes: 28 U.S.C. § 1331 (federal-question

---

[7] Likewise, although equity sometimes provides a cause of action that "enable[s] potential legal defendants to assert their defenses preemptively," John Harrison, *Ex Parte Young*, 60 Stan. L. Rev. 989, 999 (2008), the federal government does not and cannot invoke that proposition here. The federal government is not a potential defendant to a SAPA suit in state court. Nor has the federal government asserted a defense by suing a would-be state-court plaintiff. Instead, it has sued Missouri itself. Sovereign immunity aside, an equitable cause of action for an anti-suit injunction against Missouri does not make any sense because Missouri could not institute a SAPA suit against anyone, much less the federal government. *See* Mo. Rev. Stat. §§ 1.460-.470.

jurisdiction) and 28 U.S.C. § 1345 (jurisdiction in "all civil actions, suits or proceedings commenced by the United States"). *See* Doc. 1, at 4. But jurisdictional statutes such as these do not create private rights of action. *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 577 (1979) ("The source of plaintiffs' rights must be found, if at all, in the substantive provisions of the [statute] which they seek to enforce, not in the jurisdictional provision."); *see also Ohlendorf v. United Food & Com. Workers Int'l Union*, 883 F.3d 636, 642 (6th Cir. 2018) (citing *Touche Ross & Co.*, 442 U.S. at 577).

Each of these statutes only confers jurisdiction on the Court if the federal government has a cause of action. Because it has none, neither § 1331 nor § 1345 confer jurisdiction on the Court. Therefore, the Court is without jurisdiction to hear and decide this matter.[8]

## CONCLUSION

The Court should grant this motion and dismiss the case.

---

[8] The remedies the government seeks here do not confer subject-matter jurisdiction on the Court either. *See, e.g.*, *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (declaratory relief does not "extend" court's jurisdiction); 11A Wright & Miller, Fed. Prac. & Proc. § 2941 (3d ed. 2004) (collecting cases) (Fed. R. Civ. P. 65 "does not confer … subject-matter … jurisdiction on the court"; thus, "an independent basis for asserting federal question ... jurisdiction must be shown").

Respectfully Submitted,

**ERIC S. SCHMITT**
Attorney General of Missouri

/s/ *Jesus A. Osete*
D. JOHN SAUER, #58721
  *Solicitor General*
JESUS A. OSETE, #69267
  *Deputy Attorney General*

Office of the Attorney General
Supreme Court Building
P.O. Box 899
207 W. High St.
Jefferson City, MO 65102
Tel: (573) 751-1800
Facsimile: (573) 751-0774
E-mail: Jesus.Osete@ago.mo.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of March 2022, I electronically filed the foregoing with the Clerk of Court using the Court's electronic filing system, to be served on all counsel of record.

/s/ *Jesus A. Osete*
Deputy Attorney General

*Counsel for Defendants*