**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:22-cv-4022-BCW |
| | ) | |
| THE STATE OF MISSOURI *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**SUGGESTIONS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
<u>FOR LACK OF SUBJECT-MATTER JURISDICTION</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ...................................................... 2

I.      Missouri's Enactment of H.B. 85 .......................................................................... 2

II.     The United States' Suit Challenging H.B. 85, and Related Litigation .............. 4

ARGUMENT ........................................................................................................................ 8

I.      The United States Has Standing to Assert Its Claims ......................................... 8

        A.      The United States Is Injured by H.B. 85's Ongoing Effects.................... 8

                1.      The State Is Responsible for Implementing H.B. 85 ................. 9

                2.      The State's Other Arguments Are Likewise Meritless ............ 13

        B.      The State of Missouri's Ongoing Implementation and Enforcement of
                H.B. 85 Demonstrate Causation and Redressability............................ 16

II.     The United States Has a Cause of Action to Sue ............................................... 19

CONCLUSION................................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Alden v. Maine*,
    527 U.S. 706 (1999)..................................................................... 11

*Armstrong v. Exceptional Child Ctr., Inc.*,
    575 U.S. 320 (2015)................................................................. 19, 20

*Calzone v. Hawley*,
    866 F.3d 866 (8th Cir. 2017) ................................................... 10, 18

*Care Comm. v. Arneson*,
    638 F.3d 621 (8th Cir. 2011) ........................................... 12, 15, 17

*Charleston Hous. Auth. v. Dep't of Agric.*,
    419 F.3d 729 (8th Cir. 2005) ......................................................... 19

*Church v. Missouri*,
    913 F.3d 736 (8th Cir. 2019) ......................................................... 12

*City of Arnold v. State of Missouri*,
    No. 22JE-CC00010 (Mo. Circ. Ct., Jefferson Cty.).............................7

*City of St. Louis v. State of Missouri*,
    No. 21AC-CC00237 (Mo. Circ. Ct., Cole Cty.)................................. 6

*Cross v. Fox*,
    23 F.4th 797 (8th Cir. 2022) ......................................................... 19

*Denver & R.G.R. Co. v. United States*,
    241 F. 614 (8th Cir. 1917) ............................................................. 21

*Digital Recognition Network, Inc. v. Hutchinson*,
    803 F.3d 952 (8th Cir. 2015) ......................................................... 17

*Ex parte Young*,
    209 U.S. 123 (1908)....................................................................... 11

*GEO Grp., Inc. v. Newsom*,
    15 F.4th 919 (9th Cir. 2021) ...................................................... 9, 15

*Heckman v. United States*,
    224 U.S. 413 (1912)....................................................................... 20

*Hillsborough Twp. v. Cromwell*,
    326 U.S. 620 (1946) ........................................................................................... 16

*In re Debs*,
    158 U.S. 564 (1895) ........................................................................................... 20

*Jones v. Gale*,
    470 F.3d 1261 (8th Cir. 2006) ........................................................................... 15

*Miller v. Thurston*,
    967 F.3d 727 (8th Cir. 2020) ................................................................... 8, 16, 18

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010) ........................................................................................... 15

*Muskrat v. United States*,
    219 U.S. 346 (1911) ....................................................................................... 9, 13

*Printz v. United States*,
    521 U.S. 898 (1997) ........................................................................................... 16

*Reprod. Health Servs. v. Nixon*,
    428 F.3d 1139 (8th Cir. 2005) ........................................................................... 12

*Sanitary Dist. of Chi. v. United States*,
    266 U.S. 405 (1925) ........................................................................................... 20

*Three Expo Events, L.L.C. v. City of Dallas*,
    907 F.3d 333 (5th Cir. 2018) ............................................................................. 15

*United States v. Alabama*,
    691 F.3d 1269 (11th Cir. 2012) ........................................................................... 9

*United States v. American Bell Tel. Co.*,
    128 U.S. 315 (1888) ........................................................................................... 20

*United States v. Arizona*,
    703 F. Supp. 2d 980 (D. Ariz. 2010), *aff'd*, 641 F.3d 339 (9th Cir. 2011), *aff'd in part*,
    567 U.S. 387 (2012) ................................................................................... 8-9, 21

*United States v. Bd. of Cty. Comm'rs of the Cty. of Otero*,
    184 F. Supp. 3d 1097 (D.N.M. 2015), aff'd, 843 F.3d 1208 (10th Cir. 2016) ........... 9

*United States v. California*,
    507 U.S. 746 (1993) ........................................................................................... 21

*United States v. California*,
    655 F.2d 914 (9th Cir. 1980) ............................................................................. 21

iv

*United States v. City of Arcata*,
629 F.3d 986 (9th Cir. 2010) ........................................................................ 9

*United States v. Colorado Supreme Ct.*,
87 F.3d 1161 (10th Cir. 1996) ....................................................................... 9

*United States v. Fitzgerald*,
201 F. 295 (8th Cir. 1912) ........................................................................... 20

*United States v. Hartford Acc. & Indem. Co.*,
460 F.2d 17 (9th Cir. 1972) ......................................................................... 21

*United States v. McCabe Co.*,
261 F.2d 539 (8th Cir. 1958) ....................................................................... 20

*United States v. Mississippi*,
380 U.S. 128 (1965) ..................................................................................... 11

*United States v. South Carolina*,
840 F. Supp. 2d 898 (D.S.C. 2011), *aff'd*, 720 F.3d 518 (4th Cir. 2013) .................. 9

*United States v. Supreme Ct. of New Mexico*,
839 F.3d 888 (10th Cir. 2016) ....................................................................... 9

*United States v. Texas*,
--- F. Supp. 3d ----, 2021 WL 4848743 (W.D. Tex. Aug. 26, 2021) ...................... 9

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n*,
535 U.S. 635 (2002) ..................................................................................... 19

*Whole Woman's Health v. Jackson*,
142 S. Ct. 522 (2021) ................................................................................... 13

*Wyandotte Transp. Co. v. United States*,
389 U.S. 191 (1967) ..................................................................................... 20

**Statutes**

Mo. Const. art. IV ............................................................................................. 4

Mo. Rev. Stat. § 1.020(12) ............................................................................... 11

Mo. Rev. Stat. §§ 1.410–.485 ................................................................... *passim*

Mo. Rev. Stat. § 27.060 ................................................................................ 4, 11

Mo. Rev. Stat. § 43.030 ................................................................................... 18

Mo. Rev. Stat. § 106.220 ................................................................................. 12

Mo. Rev. Stat. § 106.230 ................................................................................................ 12

Mo. Rev. Stat. § 106.250 ................................................................................................ 12

Tex. Health & Safety Code § 171.207 ........................................................................... 13

**<u>Rules</u>**

Fed. R. Civ. P. 15(a)(2) ................................................................................................. 18

Fed. R. Civ. P. 65(d)(2)(B) ..................................................................................... 11, 18

# INTRODUCTION

Plaintiff, the United States of America, has filed this suit challenging the validity of H.B. 85, a Missouri statute purporting to nullify certain federal firearm laws. *See* Compl. (ECF No. 1) ¶¶ 1-10. H.B. 85 implements this nullification scheme by, among other things, providing that such federal laws "shall be invalid to this state" and "shall be specifically rejected by this state," H.B. 85 § 1.430, and by imposing an express "duty" on "the courts and law enforcement agencies of this state to protect the rights of law-abiding citizens" from the allegedly infringing federal laws. *Id.* § 1.440. Following H.B. 85's enactment, Missouri's law enforcement agencies have implemented the law by, *inter alia*, withdrawing personnel from joint federal-state-local task forces and restricting the information that can be shared with federal authorities in connection with federal firearm offenses. *See* Compl. ¶¶ 47, 54-62. These actions have hindered the United States' ability to promote public safety and enforce federal law. *See id.* ¶¶ 49, 54-55, 64, 75.

Despite the plain text of H.B. 85's provisions, and despite the real-world harms caused by the law and documented in the United States' Complaint, Defendants now move to dismiss the Complaint for lack of jurisdiction, asserting that they are "not enforcing and ha[ve] no direct authority to enforce" H.B. 85. Defs.' Mot. to Dismiss Under Rule 12(b)(1) (ECF No. 13) at 3 [hereafter "Defs.' Jurisd. MTD"]. But the State of Missouri has already admitted in other suits challenging H.B. 85 that it is responsible for enforcing statutes of the State. Moreover, the State's argument is contrary to H.B. 85's text, the factual allegations in the Complaint, and Missouri state law generally. Defendants also contend that the United States lacks a cause of action to bring this suit. *See id.* at 11-15. But numerous courts have recognized the United States' ability to seek relief against state laws that interfere with federal operations, as H.B. 85 does here. Thus, the United States' standing and cause of action to bring this suit are well-settled. For these reasons, and those discussed further below, the Court should deny Defendants' motion to dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Missouri's Enactment of H.B. 85

This lawsuit challenges H.B. 85, codified at Mo. Rev. Stat. §§ 1.410–.485, which the State of Missouri enacted in June 2021.  *See* Compl. ¶ 34.  H.B. 85 declares that "federal acts, laws, executive orders, administrative orders, rules, and regulations" falling into five categories "shall be considered infringements on the people's right to keep and bear arms, as guaranteed" by the Second Amendment to the U.S. Constitution and by the Missouri Constitution.  H.B. 85 § 1.420.  The five categories of federal laws and regulations that H.B. 85 declares to be "infringements" are:

    a.   "[a]ny tax, levy, fee, or stamp imposed on firearms, firearm accessories, or ammunition not common to all other goods and services and that might reasonably be expected to create a chilling effect on the purchase or ownership of those items by law-abiding citizens," *id.* § 1.420(1);

    b.   "[a]ny registration or tracking of firearms, firearm accessories, or ammunition," *id.* § 1.420(2);

    c.   "[a]ny registration or tracking of the ownership of firearms, firearm accessories, or ammunition," *id.* § 1.420(3);

    d.   "[a]ny act forbidding the possession, ownership, use, or transfer of a firearm, firearm accessory, or ammunition by law-abiding citizens," *id.* § 1.420(4); and

    e.   "[a]ny act ordering the confiscation of firearms, firearm accessories, or ammunition from law-abiding citizens," *id.* § 1.420(5).

H.B. 85's five categories of federal "infringements" encompass well established federal requirements for the registration and tracking of firearms and limitations on the possession of firearms by certain persons.  *See* Compl. ¶¶ 37-40.

To accomplish this nullification of federal law, H.B. 85 provides that the five categories of federal laws that constitute "infringements" under § 1.420 "shall be invalid to this state, shall not be recognized by this state, shall be specifically rejected by this state, and shall not be enforced by this state."  *Id.* § 1.430.  H.B. 85 also provides that "[i]t shall be the duty of the courts and law

enforcement agencies of this state to protect the rights of law-abiding citizens to keep and bear arms within the borders of this state and to protect these rights from the infringements defined under section 1.420." *Id.* § 1.440.

In addition, H.B. 85 purports to divest *all* persons and entities from having authority to enforce the purportedly nullified federal firearm laws within the State: "No entity or person, including any public officer or employee of this state or any political subdivision of this state, shall have the authority to enforce or attempt to enforce any federal acts, laws, executive orders, administrative orders, rules, regulations, statutes, or ordinances infringing on the right to keep and bear arms as described under section 1.420." *Id.* § 1.450.

H.B. 85 also enacts civil penalty schemes to further its nullification efforts. First, H.B. 85 provides that, for "[a]ny political subdivision or law enforcement agency that employs a law enforcement officer" who enforces or attempts to enforce any of the federal firearm laws purportedly nullified through § 1.420, the entity or agency may be subject to a civil penalty of $50,000 and an injunction. *See* H.B. 85 § 1.460.1.

Second, H.B. 85 imposes similar civil penalties on law enforcement and local entities that employ anyone who has ever played any role (since H.B. 85 was enacted) in enforcing the federal firearm laws that the law attempts to nullify. Specifically, § 1.470 imposes a civil penalty of $50,000 "per employee" against any law enforcement agency or local government that "knowingly employs an individual acting or who previously acted as an official, agent, employee, or deputy of the government of the United States, or otherwise acted under the color of federal law within the borders of [Missouri] who has knowingly" either (1) enforced or attempted to enforce "any of the infringements identified in section 1.420" or (2) has "[g]iven material aid and support to the efforts of another who enforces or attempts to enforce" them. *Id.* § 1.470.1. And H.B. 85 vests "[a]ny

person residing in a jurisdiction who believes that an individual has taken action that would violate the provisions of this section" with standing to pursue these monetary penalties, *see id.*, as well as "standing to pursue an action for injunctive relief . . . with respect to the actions of such individual." *Id.* § 1.470.2.

## II.    The United States' Suit Challenging H.B. 85, and Related Litigation

Because of H.B. 85's attempt to nullify federal law and its serious adverse impacts on law enforcement activities, the United States filed this Complaint challenging H.B. 85 under the Supremacy Clause. *See* Compl. ¶¶ 77-87. Specifically, the Complaint contends that H.B. 85 is unlawful because states cannot nullify valid federal law, because H.B. 85 is preempted, and because H.B. 85 purports to directly regulate and discriminate against the Federal Government itself. *See id.*

The Complaint names three defendants in this suit—the State of Missouri, the Governor of Missouri, and the Attorney General of Missouri (collectively, "Defendants" or "the State"). *See* Compl. ¶¶ 15-17. By naming the State of Missouri as a defendant, that "includes all of its officers, employees, and agents." *Id.* ¶ 15. Additionally, the Governor was named in his official capacity because he is "Missouri's chief executive officer" and therefore "oversees all of Missouri's executive agencies, including the Department of Public Safety and the Missouri State Highway Patrol." *Id.* ¶ 16; *see also* Mo. Const. art. IV, § 1 ("The supreme executive power shall be vested in a governor."); Mo. Const. art. IV, § 48 (specifying that the Department of Public Safety is an executive department). The Attorney General of Missouri is similarly named in his official capacity, because he "is Missouri's chief legal officer," Compl. ¶ 17, and is vested with multiple forms of enforcement authority under Missouri law. *See, e.g.*, Mo. Rev. Stat. § 27.060 ("The attorney general shall institute, in the name and on the behalf of the state, all civil suits and other proceedings at law or in equity requisite or necessary to protect the rights and interests of the

4

state[.]").

The Complaint alleges several ongoing harms caused by state and local officials' implementation of H.B. 85. First, H.B. 85 has harmed joint federal-state-local task forces, on which state and local law enforcement officers serve voluntarily and are bestowed with federal authority pursuant to federal deputations. *See* Compl. ¶¶ 52-53. For example, H.B. 85 has "prompt[ed] some state and local law enforcement agencies to instruct their personnel not to enforce particular federal laws even when acting in a federal capacity." *Id.* ¶ 54. Additionally, the Missouri State Highway Patrol has withdrawn personnel from federal task forces. *Id.* ¶ 47.

Second, H.B. 85 has "caused many state and local law enforcement agencies to stop voluntarily assisting in the enforcement of any federal firearm offense, or even offer critical investigative assistance to the Federal Government for use in its enforcement activities." *Id.* ¶ 57. Again, that includes the Missouri State Highway Patrol, which has "restrict[ed] the information that can be shared with federal authorities in connection with federal firearm offenses." *Id.* ¶ 47; *see also id.* ¶ 61 (alleging that the Missouri Information and Analysis Center, an entity operated by the Missouri State Highway Patrol, "is no longer cooperating with federal agencies pursuing any federal firearm offenses . . . thereby denying federal law enforcement access to important background information on investigative targets").

Third, H.B. 85's civil penalty provisions facially discriminate against and "impose a unique disability on federal employees—and others acting under color of federal law, such as state and local law enforcement officers deputized to enforce federal law—whose responsibilities involve enforcement of federal firearm laws." *Id.* ¶ 66. H.B. 85 thereby "seeks to undermine current federal officers' willingness to enforce federal firearm laws, and makes becoming a federal officer less attractive by limiting those officers' future job prospects within the State of Missouri." *Id.*

5

¶ 68.

Fourth, H.B. 85 creates confusion about the validity of federal firearm laws, and thus "mislead[s] state and local law enforcement officers, the regulated community of Federal Firearms Licensees, and private citizens, all of whom are obligated to comply with federal firearm laws." *Id.* ¶ 70. Notably, if a Licensee chooses to disregard its obligations due to H.B. 85, that may cause "significant harm to [the Federal Government's] ability to trace guns used in crimes and to ensure that prohibited persons do not gain access to guns in the first instance." *Id.* ¶ 74.

Based on these harms, the Complaint requests, *inter alia*, a declaratory judgment that H.B. 85 is invalid, and "clarifying that state and local officials may lawfully participate in joint federal task forces, assist in the investigation and enforcement of federal firearm crimes, and fully share information with the Federal Government without fear of H.B. 85's penalties." *Id.*, Prayer for Relief, ¶ a. The Complaint also requests an injunction against the State of Missouri, and all individuals associated with Missouri under Rule 65(d)(2), "prohibiting any and all implementation and enforcement of H.B. 85." *Id.*, Prayer for Relief, ¶ b.

After the United States filed its Complaint, the State responded by moving to dismiss for lack of jurisdiction. *See* Defs.' Jurisd. MTD. The State argues that the United States lacks standing to bring its claims, and also lacks a cause of action to bring claims under the Supremacy Clause. *See id.* at 2-15. The State has also filed a separate motion to dismiss for failure to state a claim. *See* Defs.' Rule 12(b)(6) MTD (ECF No. 16).

Separate from the current litigation, there are two ongoing state court cases brought by Missouri localities challenging or seeking clarification as to H.B. 85. First, in *City of St. Louis v. State of Missouri*, No. 21AC-CC00237 (Mo. Circ. Ct., Cole Cty.), several localities challenge H.B. 85 as unlawful under both state and federal law. *See generally* attached as Exh. A (Filings

from *City of St. Louis v. State of Missouri*), at 2-16 (Amended Petition). The United States filed a Statement of Interest in that case, discussing H.B. 85's defects and ongoing harms. Ultimately, the Missouri Circuit Court dismissed the case on procedural grounds, *see id.* at 29-30, and the case is now pending before the Supreme Court of Missouri. Additionally, in *City of Arnold v. State of Missouri*, No. 22JE-CC00010 (Mo. Circ. Ct., Jefferson Cty.), the City of Arnold requests a declaration that H.B. 85 should be interpreted narrowly, *i.e.*, not to prohibit voluntary cooperation with federal law enforcement. *See generally* attached as Exh. B (Filings from *City of Arnold v. State of Missouri*), at 2-16 (Petition). Notably, and as relevant here, in those cases the State of Missouri has admitted that it is "responsible for enacting *and enforcing* statutes of the State." *Id.* at 3, ¶ 5 (emphasis added); *see also id.* at 17 (Answer, admitting ¶ 5); *see also* Exh. A at 5, ¶ 4, *id.* at 18, ¶ 4 (alleging and admitting similar).

7

**ARGUMENT**

## I.     The United States Has Standing to Assert Its Claims

As the State recognizes, in reviewing this motion to dismiss, all factual allegations in the Complaint must be taken as true.  *See* Defs.' Jurisd. MTD at 2.  Moreover, in evaluating standing the Court "must assume that on the merits the plaintiffs would be successful in their claims." *Miller v. Thurston*, 967 F.3d 727, 734 (8th Cir. 2020).  Here, the United States has established all three elements of standing, as confirmed by precedent, H.B. 85's plain text, and the factual allegations pled in the Complaint.

### A.     The United States Is Injured by H.B. 85's Ongoing Effects

As discussed above, the United States' Complaint contains detailed factual allegations explaining how H.B. 85 has harmed (and is continuing to harm) the United States' law enforcement operations—by prompting withdrawals or limited cooperation in joint federal-state-local task forces, by restricting the investigative information the United States receives from state and local partners, by discriminating against and imposing penalties on federal employees and others who lawfully enforce federal law, and by creating confusion about the validity of federal law which threatens to make the United States' law enforcement activities more difficult.  *See* Compl. ¶¶ 48-75.  Notably, the State's motion does not dispute any of these alleged injuries.  *See* Defs.' Jurisd. MTD at 3-7.

The State's motion also fails to acknowledge the numerous precedents confirming that the United States has standing to challenge state laws that, like H.B. 85, interfere with the Federal Government's accomplishment of its functions.  *See, e.g.*, *United States v. Arizona*, 703 F. Supp. 2d 980, 1007 (D. Ariz. 2010) (holding, in challenge brought by United States to Arizona's immigration laws, that "the federal government's ability to enforce its policies and achieve its objectives will be undermined by the state's enforcement of statutes that interfere with federal

law"), *aff'd*, 641 F.3d 339 (9th Cir. 2011), *aff'd in part*, 567 U.S. 387 (2012); *GEO Grp., Inc. v. Newsom*, 15 F.4th 919, 927 (9th Cir. 2021) (accepting United States' standing to challenge state law that would "deprive the United States of the option to continue its contracts"); *United States v. Supreme Ct. of New Mexico*, 839 F.3d 888, 899 (10th Cir. 2016) (holding that United States had standing to challenge state rule that "impair[ed] the United States's interest in the effective conduct of federal criminal investigations and prosecutions"); *United States v. City of Arcata*, 629 F.3d 986, 989 (9th Cir. 2010) (confirming that United States had standing to challenge local ordinances prohibiting military recruitment activities because "[t]he ordinances, which are enforced by civil penalties, proscribe some activity encouraged by federal law"); *see also United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012); *United States v. Colorado Supreme Ct.*, 87 F.3d 1161, 1165 (10th Cir. 1996); *United States v. Texas*, --- F. Supp. 3d ----, 2021 WL 4848743, at *7 (W.D. Tex. Aug. 26, 2021); *United States v. South Carolina,* 840 F. Supp. 2d 898, 908 (D.S.C. 2011), *aff'd*, 720 F.3d 518 (4th Cir. 2013); *United States v. Bd. of Cty. Comm'rs of the Cty. of Otero*, 184 F. Supp. 3d 1097, 1110-14 (D.N.M. 2015), *aff'd*, 843 F.3d 1208 (10th Cir. 2016).

Rather than confront the allegations in the Complaint, or the ample precedent permitting the United States to challenge laws that interfere with its operations, the State offers a "facial attack" on jurisdiction. These arguments should be rejected.

### 1. The State Is Responsible for Implementing H.B. 85

Most of the State's arguments are premised on the assertion that the State does not have any responsibility for implementing or enforcing H.B. 85. *See, e.g.*, Defs.' Jurisd. MTD at 3 ("No federal court can hear a case to determine the constitutionality of a statute that the sovereign defendant is not enforcing and has no direct authority to enforce." (citing *Muskrat v. United States*, 219 U.S. 346 (1911)). But that assertion is incorrect: as H.B. 85's text, the Complaint's factual allegations, and the State's own admissions in other cases all confirm, the State is responsible for

implementing H.B. 85 in at least three ways.

First, upon enactment of H.B. 85, all state and local law enforcement agencies within Missouri were required to cease any enforcement of the allegedly infringing federal firearm laws. *See* H.B. 85 § 1.450.  Indeed, the State has conceded that H.B. 85 commands this result:  "Section 1.450 *prohibits* the State's public officers, employees, and political subdivisions from seeking to enforce the federal laws and regulations identified in Section 1.420."  Defs.' Rule 12(b)(6) MTD at 2 (emphasis added).  Moreover, the plain text of H.B. 85 imposes an *affirmative duty* on state and local law enforcement agencies to "protect" Missouri citizens from those allegedly infringing federal firearm laws.  *See* H.B. 85 § 1.440.  In the face of these provisions, the State cannot maintain that it has no role in administering or implementing H.B. 85's nullification scheme, particularly when it has twice before admitted such responsibility.

The Complaint's factual allegations further underscore that state and local officials are implementing H.B. 85.  To take just one example, in response to the law, the Missouri State Highway Patrol withdrew its personnel from joint federal-state-local task forces, and restricted the information that could be shared with federal law enforcement agencies.  *See* Compl. ¶¶ 47, 61, 63.  Numerous other state and local jurisdictions have taken similar actions to carry out the law's terms.  *See id.* ¶¶ 54-55, 57-60, 62.  Those actions are direct implementations of a Missouri statute, which the Eighth Circuit has previously held are sufficient for standing.  *See Calzone v. Hawley*, 866 F.3d 866, 870 (8th Cir. 2017) (holding that the Superintendent of the Missouri State Highway Patrol "is subject to suit on claims for injunctive and declaratory relief" based on "[h]er directions that patrol officers should implement the statute").

In a different filing in this case, the State tried to downplay its law enforcement agencies' ongoing implementation of H.B. 85 as merely demonstrating "that non-parties are following the

law[.]" Defs.' Stay Reply (ECF No. 26) at 7. But those law enforcement agencies cannot be described as "non-parties" here, given that the State of Missouri itself is a party, including all of its officers, employees, and agents. *See* Compl. ¶ 15; *see also* Fed. R. Civ. P. 65(d)(2)(B) (confirming that injunctions extend to a party's "officers, agents, servants, employees, and attorneys"). Thus, the Missouri State Highway Patrol's actions, and the actions of other state and local law enforcement agencies implementing H.B. 85, are actions taken by one of the parties to this case—and it is those very actions that constitute the United States' injuries here.[1]

Second, the State also has authority to bring civil penalty actions under H.B. 85, which the State concedes is a mode of "enforcing" the law. *See* Defs.' Jurisd. MTD at 8-10. As noted above, the Attorney General of Missouri has authority to institute "all civil suits" on behalf of the State. *See* Mo. Rev. Stat. § 27.060. And H.B. 85's plain text confirms that the State of Missouri itself may institute civil penalty proceedings under §§ 1.460 and 1.470. Those provisions authorize civil actions by "any person," and the term "person" under Missouri law includes political entities. *See* Mo. Rev. Stat. § 1.020(12) ("The word 'person' may extend and be applied to bodies politic and corporate, and to partnerships and other unincorporated associations[.]"). Moreover, H.B. 85's civil penalty actions allow "the prevailing party, other than the state of Missouri or any political subdivision of the state," to recover attorney's fees. H.B. 85 §§ 1.460.2, 1.470.3. But the "state of Missouri" cannot be a *defendant* in a civil penalty action, because such actions may only be filed against "political subdivision[s] or law enforcement agenc[ies]." *Id.* §§ 1.460.1, 1.470.1.

_____

[1] Defendants' motion does not dispute that the State of Missouri itself is a proper defendant in this case. And unlike suits filed by private plaintiffs, which are required to be brought against individual officers under *Ex parte Young*, 209 U.S. 123 (1908), here the plaintiff is the United States, which is not impeded by states' Eleventh Amendment immunity. *See United States v. Mississippi*, 380 U.S. 128, 140 (1965) ("[N]othing in [the Eleventh Amendment] or any other provision of the Constitution prevents or has ever been seriously supposed to prevent a State's being sued by the United States."); *see also Alden v. Maine*, 527 U.S. 706, 755 (1999).

Thus, the only way for the State itself to be a "prevailing party" in an H.B. 85 penalty action is for the State to have *filed* that action. As even Defendants concede, such authority is sufficient to constitute enforcement of the law. *Cf. 281 Care Comm. v. Arneson*, 638 F.3d 621, 632-33 (8th Cir. 2011).

Third, even apart from H.B. 85's civil penalty actions, Missouri law gives the Governor and the Attorney General authority to enforce H.B. 85 through other means. *Cf. Church v. Missouri*, 913 F.3d 736, 749 (8th Cir. 2019) (holding that a state official has sufficient connection to the challenged statute to be a proper defendant if their "authority gives [them] *methods* of enforcement"). Under Missouri law, if any government official has "neglect[ed] . . . any official duty," then that official is removable from office. Mo. Rev. Stat. § 106.220. And removal can occur by a person filing an affidavit stating the relevant facts, *see id.* § 106.230, at which point "the governor may, in his discretion, direct the attorney general to assist in the prosecution against said officer," and if the local prosecuting attorney declines to pursue a complaint, "the attorney general shall have authority to file a complaint against the official complained of." *Id.* § 106.250. In other words, through this officer-removal scheme, upon the filing of the necessary affidavit alleging that a state or local official has neglected their "duty" under H.B. 85 § 1.440, the Governor and the Attorney General gain additional enforcement authority with respect to H.B. 85—because they can seek to remove officials who fail to comply with H.B. 85's terms. Such enforcement authority, albeit contingent upon the filing of the necessary affidavit, is still sufficient to confer standing. *See Reprod. Health Servs. v. Nixon*, 428 F.3d 1139, 1145 (8th Cir. 2005) (because the Missouri Attorney General "is authorized to aid prosecutors when so directed by the Governor, and to sign indictments 'when so directed by the trial court,'" that "creates a sufficient connection" to the challenged statute to allow for suit against the Attorney General).

Thus, the State has at least three modes for enforcing H.B. 85—state and local law enforcement agencies' ongoing implementation of H.B. 85's prohibitions, the Attorney General's authority to pursue civil penalty actions, and the Attorney General's and Governor's authority to seek removal of officials who fail to comply with their duties under H.B. 85. Those methods of enforcement distinguish this case from *Muskrat*, in which the Supreme Court held there was no jurisdiction because the defendant there (the United States) "has no interest adverse to the claimants," because the plaintiffs were not asserting any rights "as against the government" or complaining of "alleged wrongs because of action upon [the government's] part." 219 U.S. at 361. But here, the parties are obviously adverse, and the United States *is* complaining of alleged wrongs carried out by the State of Missouri (*i.e.*, the ongoing implementation of H.B. 85). Consistent with the ample authority cited above, then, because H.B. 85 interferes with the Federal Government's accomplishment of its federal functions and is implemented by the State, the United States has standing to challenge the law, and nothing in *Muskrat* is to the contrary.[2]

### 2. The State's Other Arguments Are Likewise Meritless

Apart from the State incorrectly disclaiming any role in implementing H.B. 85, the State offers several other arguments disputing the United States' injury-in-fact, none of which has merit.

First, the State contends that the Federal Government "is not even liable" under H.B. 85,

---

[2] For similar reasons, the Supreme Court's recent decision in *Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021), has no bearing here. The state law at issue there contained an express provision that "generally does not allow state officials to bring criminal prosecutions or civil enforcement actions." *Id.* at 530; *see* Tex. Health & Safety Code § 171.207. In contrast here, H.B. 85 does not foreclose enforcement by Missouri, and instead affirmatively directs it—by imposing an express duty on law enforcement agencies to implement H.B. 85, by prohibiting state and local personnel from implementing the federal firearm laws alleged to be invalid, and by authorizing the State of Missouri itself to file civil penalty actions. Moreover, as discussed below, there is relief available here wholly apart from the types of relief discussed in *Whole Woman's Health*—*e.g.*, an injunction against the State of Missouri and its employees prohibiting their ongoing implementation of H.B. 85.

and similarly cannot show a "credible threat" against it. Defs.' Jurisd. MTD at 5-6. As an initial matter, the civil penalty provisions (relied upon by the State for this argument) are not the sole source of the United States' injuries here. As set forth in the Complaint, the United States' injuries are caused by H.B. 85's nullification scheme as a whole, including the provisions imposing an express duty on law enforcement agencies to "protect" against the allegedly infringing laws and prohibiting state and local employees from voluntarily enforcing those laws. *See* H.B. 85 §§ 1.440, 1.450. Those provisions are in effect and are actively being implemented by the State. Thus, there is no need to show any "credible threat" of civil penalty enforcement against the United States given that these other provisions of H.B. 85 independently cause the United States' injuries.

In any event, the State is wrong that H.B. 85 does not apply directly to the Federal Government. The text of H.B. 85 provides: "*No entity or person*, including"—but not limited to—"any public officer or employee of this state or any political subdivision of this state, shall have the authority to enforce or attempt to enforce any federal acts . . . infringing on the right to keep and bear arms as described under section 1.420." H.B. 85 § 1.450 (emphasis added). The State does not explain how "[n]o entity or person" could be construed as excluding federal personnel. Similarly, the civil penalty provisions extend to "[a]ny political subdivision *or law enforcement agency*," §§ 1.460.1, 1.470.1 (emphasis added), and the natural reading of "law enforcement agency" would include federal law enforcement agencies as well. Thus, H.B. 85 does appear to regulate the Federal Government directly. And even if the provisions were construed to apply only to state and local personnel, that still would not cure the defect: H.B. 85 would still negate federal authority by virtue of those state and local employees who are federally deputized and bestowed with federal authority to enforce federal firearm laws, but whose federal authority H.B. 85 "specifically reject[s]" and declares "invalid." H.B. 85 § 1.430; *see also* Compl. ¶¶ 52-

55 (discussing these deputations and harms). As an entity directly regulated by H.B. 85, the United States has standing to challenge the law. *Cf. 281 Care Comm.*, 638 F.3d at 628.

Even if H.B. 85 were construed in the manner the State suggests (as applying only to state and local personnel and wholly ignoring the deputation issue described above), the United States would still have standing as the clear target of H.B. 85's prohibitions and given H.B. 85's widespread effects in the State. If the State enacted a similar law targeting any other entity—for example, declaring a corporation's business activities "invalid" and prohibiting any other entity from contracting with the corporation to carry out those activities—it would be unreasonable to claim that the targeted corporation lacks sufficient injury to challenge the statute. Yet that is exactly the State's argument here, as H.B. 85 similarly rejects federal authority to enforce certain firearm laws and prohibits voluntary cooperation with the United States to carry out those activities. Thus, the United States equally has sufficient injury-in-fact to challenge the law. *See GEO Grp.*, 15 F.4th at 927 (upholding standing because the challenged state law would "deprive the United States of the option to continue its contracts"); *see also, e.g.*, *Jones v. Gale*, 470 F.3d 1261, 1266-67 (8th Cir. 2006) (holding that plaintiff had standing to challenge law that prevented him from contracting with certain entities thereby harming his business); *Three Expo Events, L.L.C. v. City of Dallas*, 907 F.3d 333, 341-42 (5th Cir. 2018) (company could challenge municipal law that precluded city from contracting with company for use of convention center).

The State also argues that the United States lacks injury-in-fact because the United States can assert the validity of federal law as an affirmative defense in H.B. 85 enforcement actions. *See* Defs.' Jurisd. MTD at 6. But this argument goes to the appropriate remedy for a violation of the United States' claims, not the United States' standing. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57 (2010) (evaluating this issue as a remedial question, after a violation has

15

already been established).  For standing purposes, the merits of the United States' claims are assumed.  *See Miller*, 967 F.3d at 734.

Regardless, the State's argument is wrong: raising affirmative defenses in individual cases as they arise is not "an adequate remedy at law," Defs.' Jurisd. MTD at 6, particularly for the system-wide injuries alleged in the Complaint here.  Even if the United States (or some other defendant in a civil penalty action) successfully raised H.B. 85's invalidity as an affirmative defense, that would only result in the United States (or that other party) avoiding liability under H.B. 85.  It would not result in the type of prospective relief requested in this Complaint—*e.g.*, an order compelling the State to cease implementing H.B. 85—and therefore the ability to raise affirmative defenses does not preclude the equitable relief sought here.  *See, e.g.*, *Hillsborough Twp. v. Cromwell*, 326 U.S. 620, 629 (1946) ("A remedy at law cannot be considered adequate so as to prevent equitable relief, unless it covers the entire case made by the bill in equity.").

Finally, the State contends that the Federal Government cannot show injury because H.B. 85 represents a decision not to assist in the enforcement of federal law.  *See* Defs.' Jurisd. MTD at 7 (citing *Printz v. United States*, 521 U.S. 898 (1997)).  But again, that is a merits issue— the same one presented by Defendants' Rule 12(b)(6) motion to dismiss—inappropriate for resolution in connection with standing.  And for all the reasons explained by the United States in its Complaint, H.B. 85 is not simply a decision not to assist—H.B. 85 is expressly predicated on the unlawful nullification of federal law, and the statute seeks to affirmatively interfere with, disrupt, and penalize federal law enforcement operations.  H.B. 85 is therefore unlawful, and the United States has standing to challenge the law.

**B.**     **The State of Missouri's Ongoing Implementation and Enforcement of H.B. 85 Demonstrate Causation and Redressability**

The State also attempts to dispute the causation and redressability elements of standing,

largely by reprising its prior arguments that it has no role in enforcing H.B. 85. *See* Defs.' Jurisd. MTD at 7-11. As explained above, however, the State of Missouri as a whole—as well as the Governor and Attorney General specifically—have authority to implement and enforce, and are indeed implementing and enforcing, H.B. 85's provisions. *See* Part I.A.1, *supra*. Thus, they are proper defendants in this suit.

The State's authority to enforce H.B. 85 distinguishes this case from *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952 (8th Cir. 2015), on which the State relies. In that case, the challenged law "provides for enforcement only through private actions for damages," *id.* at 958, whereas here the State is implementing and enforcing H.B. 85. The fact that H.B. 85 provides for two methods of enforcement—by both governmental officials and private individuals—does not defeat standing, because the United States' requested injunction would at least redress the discrete injuries caused by the State's implementation and enforcement of H.B. 85. *See 281 Care Comm.*, 638 F.3d at 631 (noting that, to satisfy redressability, a party "need not show that a favorable decision will relieve his *every* injury," and holding that an injunction against government officials "would redress a discrete injury to plaintiffs" even though the challenged statute could also be civilly enforced by "any other individual or organization").

Moreover, the Eighth Circuit has already confirmed that causation and redressability exist when a state law enforcement agency is implementing a challenged law, as Missouri's law enforcement agencies are doing here with respect to H.B. 85. *See* Compl. ¶¶ 47, 52-55, 57-63, 71, 73. For example, the Missouri State Highway Patrol is actively implementing H.B. 85 by withdrawing personnel from task forces and refusing to share certain information with the Federal Government. *See* Compl. ¶¶ 47, 61, 63. An injunction against the Highway Patrol's ongoing implementation of H.B. 85 would redress these discrete injuries to the United States, and thus the

Highway Patrol's actions independently confirm standing.  *See Calzone*, 866 F.3d at 870 ("Calzone plainly has standing to sue the superintendent [of the Highway Patrol]. . . . Her directions that patrol officers should implement the statute by conducting vehicle inspections cause Calzone's injury, and an order directing her to cease and desist would redress the injury."); *see also Miller*, 967 F.3d at 735 ("Absent enforcement of the challenged . . . rules, the plaintiffs' asserted injuries disappear.").

Such relief—an injunction against H.B. 85's implementation by the State Highway Patrol (and every other state or local law enforcement agency implementing the law)—is precisely what the United States has requested in this suit, in the form of an injunction against the State of Missouri which would also apply and extend to the State's employees and officers.  *See* Fed. R. Civ. P. 65(d)(2)(B).  The State does not offer any reason why such relief cannot be granted here, except to contend that the United States cannot "su[e] the State as a nominal defendant" and thereby obtain "relief that runs against the state officers that it cannot sue directly."  Defs.' Jurisd. MTD at 9.  But here, the United States undoubtedly *could* sue the Superintendent of the Highway Patrol directly.  *See Calzone*, 866 F.3d at 870.  To the extent the State's argument is simply that the United States *should* have named the Superintendent of the Highway Patrol as a defendant, that seeks to elevate form over substance given that the State itself is a named party.  *See also* Fed. R. Civ. P. 65(d)(2)(B); Mo. Rev. Stat. § 43.030 (confirming that the Superintendent of the Highway Patrol is a state employee); Compl. ¶ 16.  If there is any doubt, however, the Court should simply moot this issue by directing the United States to file an Amended Complaint adding the Superintendent of the Highway Patrol as a defendant.  *Cf.* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

At bottom, the State and its employees have authority to implement, and are implementing,

H.B. 85, as the statute's plain text and the factual allegations in the Complaint confirm. The State does not dispute that standing exists as to those defendants who do implement or enforce H.B. 85. For the reasons discussed above, therefore, the State's standing arguments should be rejected.

## II. The United States Has a Cause of Action to Sue

Apart from standing, the State also contends that the United States lacks a cause of action to bring this suit. *See* Defs.' Jurisd. MTD at 11-15. As an initial matter, it is far from clear that this argument is jurisdictional.[3] In any event, the argument should be rejected because the United States is entitled to bring suit in equity to vindicate its sovereign interests.

Despite the State's protestations that no cause of action exists here, it does not appear that there is actually a meaningful dispute on this issue. Several pages into the argument, the State ultimately concedes that the United States "has an equitable cause of action that allows federal courts to 'grant injunctive relief against state officers who are violating, or planning to violate, federal law.'" Defs.' Jurisd. MTD at 13-14 (quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326-27 (2015)). That is exactly the cause of action that the United States invokes here—an action to enjoin the State of Missouri's officers and employees from ongoing enforcement and implementation of H.B. 85, which violates federal law. Again, the State's only argument as to why this cause of action does not apply here is because H.B. 85 "provides only for private civil enforcement," *id.* at 14, which is incorrect for the reasons discussed in Part I.A above. Consistent with this well-established cause of action, therefore, the United States may bring this suit to enjoin ongoing violations of federal law by the State's officers and employees. *See*

---

[3] The State cites *Cross v. Fox*, 23 F.4th 797 (8th Cir. 2022), which held that the lack of a cause of action under the Indian Civil Rights act was a jurisdictional defect. *Id.* at 803. But in other contexts, the Supreme Court and the Eighth Circuit have expressed the opposite conclusion. *See, e.g.*, *Verizon Maryland, Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 642-43 (2002); *Charleston Hous. Auth. v. Dep't of Agric.*, 419 F.3d 729, 736 n.3 (8th Cir. 2005). The Court need not decide this issue because the argument is meritless either way.

*Armstrong*, 575 U.S. at 327 ("The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England.").

To the extent the State intends to argue something broader about the United States' alleged lack of a cause of action, any such position would be untenable. As noted, the Supreme Court has long recognized the United States' ability to assert an equitable cause of action to enforce its rights and protect its interests, as has the Eighth Circuit. *See, e.g.*, *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 201 (1967) ("Our decisions have established . . . the general rule that the United States may sue to protect its interests."); *In re Debs*, 158 U.S. 564, 584 (1895) ("Every government, [e]ntrusted by the very terms of its being with powers and duties to be exercised and discharged for the general welfare, has a right to apply to its own courts for any proper assistance in the exercise of the one and the discharge of the other."); *United States v. McCabe Co.*, 261 F.2d 539, 543 (8th Cir. 1958) (noting that the "cause of action in favor of the United States . . . arises as an incident of a lawful governmental operation engaged in pursuant to an act of Congress"); *United States v. Fitzgerald*, 201 F. 295, 296-97 (8th Cir. 1912) ("The United States may lawfully maintain suits in its own courts to prevent interference with the means it adopts to exercise its powers of government and to carry into effect its policies. It may maintain such suits, although it has no pecuniary interest in the subject-matter thereof, for the purpose of protecting and enforcing its governmental rights and to aid in the execution of its governmental policies."); *see also Sanitary Dist. of Chi. v. United States*, 266 U.S. 405, 426 (1925); *Heckman v. United States*, 224 U.S. 413, 438-439 (1912); *United States v. American Bell Tel. Co.*, 128 U.S. 315, 367-368 (1888).

In contrast to this ample precedent, the State cites little on-point authority disputing the

United States' authority to sue in equity.[4]  And the consequences of accepting any broader version of the State's argument would be remarkable.  It would mean that, even though H.B. 85 injures the United States' law enforcement operations in a cognizable manner sufficient to establish Article III standing, the United States *still* may not obtain relief from that unlawful interference because there is no cause of action.  Moreover, it would mean that, in all of the numerous cases in which the United States previously sued a state or locality to prevent ongoing interference with federal functions, every time a court decided the merits it did so in error—because the court should have instead dismissed the case for lack of a cause of action.  It is untenable for the State to argue that every single one of the cases cited in Part I.A, *supra*, was incorrectly decided, including the Supreme Court's decision in *Arizona*, 567 U.S. at 387.  Instead, it is the State's novel argument— attempting to deny the United States access to a federal forum to prevent ongoing interference with federal functions in violation of federal law—that should be rejected.

Here, the factual allegations in the Complaint—which are required to be accepted as true at this stage—establish both standing and a cause of action in equity, and thus this suit should proceed to the merits.  The State's motion to dismiss should be denied.

## CONCLUSION

Defendants' jurisdictional motion to dismiss, ECF No. 13, should be denied.

---

[4] Virtually all of the State's cited cases involve different types of actions, not equitable actions (like this one) seeking to enjoin government officials from ongoing violations of federal law.  *See, e.g.*, *United States v. California*, 507 U.S. 746 (1993) (attempt to recover money paid to state by government contractor, without any claim that the state tax was unconstitutional); *Denver & R.G.R. Co. v. United States*, 241 F. 614, 615 (8th Cir. 1917) (attempting to recover "damages for the destruction by fire of certain timber"); *United States v. California*, 655 F.2d 914 (9th Cir. 1980) (attempt to recover costs of fire suppression); *United States v. Hartford Acc. & Indem. Co.*, 460 F.2d 17 (9th Cir. 1972) (seeking recovery of medical expenses from insurance company).

Dated: March 28, 2022

SAYLER A. FLEMING
United States Attorney
Eastern District of Missouri

TERESA A. MOORE
United States Attorney
Western District of Missouri

 /s/ Alan T. Simpson
ALAN T. SIMPSON (Mo. Bar 65183)
Assistant United States Attorney
Western District of Missouri
400 East 9th Street, Room 5510
Kansas City, MO 64106
Telephone: (816) 426-3130
Fax: (816) 426-3165
Email: alan.simpson@usdoj.gov

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIAN D. NETTER
Deputy Assistant Attorney General

CRISTEN C. HANDLEY
Counsel, Civil Division

ALEXANDER K. HAAS
Director

 /s/ Daniel Schwei
DANIEL SCHWEI
Special Counsel
DANIEL RIESS
CASSANDRA M. SNYDER
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: 202-305-8693
Fax: 202-616-8460
Email: Daniel.S.Schwei@usdoj.gov