| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:22-cv-4022-BCW |
| | ) | |
| THE STATE OF MISSOURI *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# Exhibit B:

Filings from *City of Arnold v. State of Missouri,
22JE-CC00010 (Mo. Circ. Ct., Jefferson Cty.)*

| Filing | Pages |
|---|---|
| Petition | 2-16 |
| Answer | 17-29 |

IN THE CIRCUIT COURT OF JEFFERSON COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| CITY OF ARNOLD, MISSOURI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 22JE-CC |
| | ) | Division |
| STATE OF MISSOURI, | ) | |
| Serve: Eric Schmitt | ) | |
|     Office of Attorney General | ) | |
|     207 High Street | ) | |
|     Jefferson City, MO 65102 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ERIC SCHMITT, Attorney General | ) | |
| For the State of Missouri | ) | |
| Serve: Office of Attorney General | ) | |
|     207 High Street | ) | |
|     Jefferson City, MO 65102 | ) | |
| | ) | |
| Defendants. | ) | |

## PETITION

COMES NOW Plaintiff, City of Arnold, Missouri, a political subdivision of the State of Missouri, and for its cause of action against the State of Missouri and Attorney General Eric Schmitt, states:

## PARTIES

1.    Plaintiff City of Arnold, Missouri (hereinafter referred to as "Plaintiff" or "City") is a municipal corporation and political subdivision of the State of Missouri, organized under Chapter 77 of the Revised Statutes of Missouri, providing a panoply of municipal services, including law enforcement.

2.    The City is located wholly within Jefferson County, Missouri.

1

3.	The City provides law enforcement services to its roughly 21,000 residents and the several hundred thousand commuters/visitors that pass through the City during any given month.

4.	The City also provides law enforcement support to various other local, state and federal law enforcement agencies in need of such support, including but not limited to, mutual aid, participation in local, state and federal task forces, and joint training sessions.

5.	Defendant State of Missouri ("State") is a political body organized and existing under the Missouri Constitution and the United States Constitution, acting by and through the General Assembly and Governor, and is responsible for enacting and enforcing statutes of the State.

6.	Defendant Hon. Eric Schmitt is the Attorney General of Missouri and represents the State of Missouri in actions against it.

**JURISDICTION AND VENUE**

7.	This Court has jurisdiction over this action pursuant to §§ 1.460 and 1.470 of the Second Amendment Preservation Act, Title 1, Chapter 1, §§ 1.410-1.458, RSMo, and pursuant to the Declaration Judgment Act, §§ 527.010, RSMo., and Mo. Const. Art. X, § 23, insomuch as Plaintiff seeks a declaration of its rights and obligations under provisions of the Second Amendment Preservation Act ("SAPA"), specifically, §§ 1.420, 1.470.1, 1.480.1 and 1.801.4.

8.	Venue is proper in this County pursuant to §§ 1.460 and 1.470 of SAPA.

2

9. Plaintiff presents a ripe and justiciable controversy, as set forth hereinafter, in that the language contained in SAPA places a daily and unreasonable burden on the City's law enforcement officers to interpret SAPA's vague language and attempt compliance, making it prudent for the City's law enforcement officers to simply steer clear of any involvement with federal agencies or laws that could possibly have anything to do with guns, despite the potential negative impact on the City's law enforcement officers' ability to protect its citizens and comply with other state and federal statutes.

10. Under the Declaratory Judgment Act, § 527.020, RSMo, any person whose rights, status or other legal relations are affected by a statute, may have determined any question of construction or validity arising under the statute and obtain a declaration of rights, status or other legal relations thereunder.

11. Plaintiff has no adequate remedy at law, as Plaintiff's law enforcement officers face irreparable harm due to the daily challenge of attempting to interpret the vague language contained in SAPA to ensure compliance, which in some instances, hinders the City's law enforcement officers' ability to protect its citizens due to the threat of litigation if an officer's action(s) somehow violates SAPA. Waiting until a lawsuit is brought against a law enforcement officer or the City for a potential violation of SAPA does not enable the City to raise its claims for declaratory relief in such a manner as to provide a declaration of all the City's rights and obligations under SAPA in the future; and in the interim, forces the City's law enforcement officers to steer clear of any activities, that may violate SAPA subjecting the City and its law enforcement officers to litigation, even if necessary to assist the City in protecting its citizens and the public.

3

**ALLEGATIONS COMMON TO ALL COUNTS**

12.     On June 12, 2021, the Governor of the State of Missouri signed into law the "Second Amendment Preservation Act," Title I, Chapter 1, §§ 1.410-1.485, RSMo, legislation which purports to provide further insulation and protection to Missouri citizens' rights under the Second Amendment of the United States Constitution and Article 1, Section 23 of the Constitution of the State of Missouri.

13.     However, the wording and structure of SAPA has caused great confusion and unintended legal implications which jeopardizes the relationships and working partnerships that the City and its law enforcement officers have with federal agencies – relationships and working partnerships that have allowed the City and its law enforcement officers to better protect its citizens and the citizens of Missouri from violence and dangerous criminals.

14.     The vague language contained in SAPA appears to thwart the City's law enforcement officers' ability to continue working with federal partners to, for example, help law-abiding citizens recover their stolen firearms, which appears to be in direct conflict with the stated purpose of SAPA.

15.     SAPA's apparent prohibition against entering information into federal databases appears to be in clear violation of § 43.505 of the Missouri Revised Statutes, which requires that every law enforcement agency in the state of Missouri shall: 1) submit crime reports to the department of public safety on forms or in the format prescribed by the department; and 2) submit any other crime incident information which may be required by the department of public safety.

4

16.     By attempting to comply with SAPA's prohibition against entering information into certain federal databases, the City is forced to risk violating § 43.505 RSMo, putting its eligibility to receive state or federal funds which would otherwise be paid to such agency for law enforcement, safety or criminal justice purposes in jeopardy.

17.     The vague language in SAPA also appears to create an unnecessary hardship and enormous uncertainty in the hiring process for the City's police department at a time when the recruitment, hiring and retention of law enforcement officers is exceptionally difficult.

18.     SAPA's apparent restriction on the recruitment, hiring and retention of law enforcement officers who are currently or formerly employed by or affiliated with any agency of the United States federal government appears to prohibit the City from recruiting, hiring and retaining law enforcement officers who are or were employed by any federal law enforcement agency and anyone who is or was a member of the United States military, putting it in direct conflict with the Federal Reemployment Rights Act of 1994 ("USERRA"), which was enacted to protect servicemembers' and veterans' from discrimination based on their military service or affiliation.

19.     This implied prohibition on the recruitment, hiring and retention of law enforcement officers who have or had an affiliation with any agency or military branch of the United States federal government leaves the City apprehensive to hire anyone formerly employed by a federal law enforcement agency or anyone who is a veteran.

20.     In addition, the vague language and structure of SAPA appears to prohibit the City and its law enforcement officers from seizing firearms, accessories or ammunition

5

for safekeeping in order to protect officers, victims and the public in certain situations, including but not limited to, domestic violence incidents, suicide attempts, assaults and incidents involving subjects suffering from mental illness or addiction.

21.     SAPA's vague and confusing language purports to prohibit the City from utilizing federal resources and investigative tools such as the National Integrated Ballistics Information Network ("NIBIN"), hindering the City's ability to investigate potentially violent and dangerous crimes that threaten the safety of the City, its citizens and the public.

22.     SAPA's ambiguous language also appears to hinder the City's policing efforts by preventing the City and its law enforcement officers from utilizing federal resources which provide potential funding for overtime, equipment and other necessary capital items.

23.     SAPA implied prohibitions impose an unreasonable burden on the City's law enforcement officers to interpret its vague language in order to ensure compliance. The breadth of the Act and the uncertainty of how it will be enforced makes it prudent for the City's law enforcement officers to simply steer clear of any involvement with federal agencies, resources or laws, regardless of the impact it has on the law enforcement officers' ability to protect the City, its citizens and the public for fear of frivolous litigation.

24.     As a result of the vague and confusing language of SAPA, the purported inability of the City and its law enforcement officers to enter relevant information into any federal database could hinder ongoing efforts to prevent future terrorist activity from occurring in the City, the State of Missouri and/or the United States of America.

6

25.     The vague and overreaching language contained in SAPA also calls into question the daily actions taken by the City and its law enforcement officers in conjunction with, or utilizing the assistance of, any federal agency or program, causing continuous irreparable harm to the City's law enforcement officers' ability to serve and protect its citizens and the public from violent and dangerous criminals.

26.     Plaintiff seeks clarification of Sections 1.420, 1.470.1, 1.480.1 and 1.480.4 in hopes to prevent a future finding that the language in SAPA is unconstitutionally vague in violation of Article I, Sections 8 and 10 of the Missouri Constitution and/or that SAPA constitutes an ex post facto law which violates Article I, Section 13 of the Missouri Constitution.

**COUNT I**
**DECLARATORY JUDGMENT AS TO SECTION 1.420**

27.     Plaintiff realleges and incorporates by reference the allegations set forth in the preceding Paragraphs 1-26 as if fully set forth herein.

28.     Section 1.420 of SAPA states that:

> The following federal acts, laws, executive orders, administrative orders, rules, and regulations shall be considered infringements on the people's right to keep and bear arms, as guaranteed by Amendment II of the United States Constitution and Article I, Section 23 of the Constitution of Missouri, within the borders of this state including, but not limited to:
>
> (1) Any tax, levy, fee, or stamp imposed on firearms, firearm accessories, or ammunition not common to all other goods and services and that might reasonably be expected to create a chilling effect on the purchase or ownership of those items by law-abiding citizens;
>
> (2) Any registration or tracking of firearms, firearm accessories, or ammunition;

7

(3) Any registration or tracking of the ownership of firearms, firearm accessories, or ammunition;

(4) Any act forbidding the possession, ownership, use, or transfer of a firearm, firearm accessory, or ammunition for law-abiding citizen; and

(5) Any act ordering the confiscation of firearms, firearm accessories, or ammunition from law-abiding citizens.

29.     Because Section 1.420 of the SAPA is vague and subject to a myriad of interpretation, it has caused confusion among the City's law enforcement officers and raises a number of questions that hinder law enforcement's ability to defend and protect it citizens, Missouri citizens and the general public.

30.     Specifically, the wording of Section 1.420 calls into question whether the prohibitions listed apply to EVERY federal act, law, regulation, executive order, administrative order, rule and/or regulation regardless of when it was enacted or whether they only apply to federal act, law, executive order, administrative order, rules and regulations enacted into law AFTER June 12, 2021 or August 28, 2021, whichever is the actual effective date of SAPA because it is unclear from the language in the statute.

31.     Similarly, the wording in Section 1.420 raises the issue of whether the City's law enforcement officers can seize firearms, accessories or ammunition for safekeeping in order to protect victims and the public in certain situations, including but not limited to, incidents of domestic violence, suicide attempts, assaults and incidents involving individuals suffering from mental illness or addiction, when the law enforcement officer cannot determine if a gun is, or will be, evidence.

8

32.     Section 1.420 of SAPA purports to prohibit the City's law enforcement officers from utilizing state databases which feed information into federal databases and it is unclear whether the City's law enforcement officers are prohibited from:

a.     entering firearms, accessories or ammunition into local records management ("RMS") and/or computer aided dispatch ("CAD") systems;

b.     entering stolen firearms into the National Crime Information Center ("NCIC") database, the Missouri Incident Based Reporting System ("MIBRS") and the National Incident Based Reporting System ("NIBRS"); and

c.     entering ammunition and/or ballistics into the National Integrated Ballistics Information Network ("NIBIN").

33.     As a result of Section 1.420's apparent prohibition against the use of NCIC, NIBIRS and MIBIRS, it is unclear to the City's law enforcement officers what mechanism is available to them to assist law-abiding citizens in the recovery of their stolen firearms.

34.     Moreover, because SAPA's prohibition against "any registration or tracking of firearms, firearm accessories or ammunition," including the "registration or tracking of the ownership of firearms, firearm accessories or ammunition" seems to run afoul of § 43.505, RSMo, the City and its law enforcement officers are left with the near impossible choice of either violating SAPA by complying with § 43.505, or complying with SAPA and losing its eligibility to receive state or federal funds which would otherwise be paid to such agency for law enforcement, safety or criminal justice purposes.

35.     The language in SAPA is so unclear that the City cannot determine if it is permitted to participate in a task force by having one of its law enforcement officers

designated as a Task Force Officer ("TFO") or whether it is permitted to enter into a Memorandum of Understanding ("MOU") with a Federal Task Force.

36.     Finally, the language of Section 1.420 makes it unclear as to whether the City's law enforcement officers are prohibited from participating in or filling a seat on a governing board of a drug task force or any local task force with a federal nexus/partnership and associating MOUs.

**WHEREFORE**, the premises considered, Plaintiff respectfully prays that the Court issue an order 1) awarding Plaintiff a preliminary injunction and such additional relief as may be necessary to avert the irreparable harm that is likely to occur on a daily basis during the pendency of this action and to present the possibility of effective final relief, and 2) declaring that Section 1.420 of SAPA:

A.     Applies only to those federal acts, laws, executive orders, administrative orders, rules and regulations enacted into law after June 12, 2021 or August 28, 2021, whichever is the actual effective date of SAPA because the language in SAPA is unclear;

B.     Does not prohibit law enforcement officers from seizing firearms, accessories or ammunition for safekeeping in order to protect victims and the public in certain situations, including but not limited to, domestic violence incidents, suicide attempts, assaults and incidents involving subjects suffering from mental illness or addiction, when a law enforcement officer cannot determine if a firearm is, or will be evidence;

10

C.     Does not prohibit law enforcement officers from entering firearms, accessories or ammunition into local records management systems ("RMS") and/or computer aided dispatch ("CAD") systems;

D.     Does not prohibit law enforcement officers from entering stolen firearms into the National Crime Information Center ("NCIC") database;

E.     Does not prohibit law enforcement officers from entering stolen firearms into the National Incident Based Reporting System ("NIBNS") or the Missouri Incident Based Reporting System ("MIBRS");

F.     Does not prohibit law enforcement officers from entering ammunition and/or ballistics into the National Integrated Ballistics Information Network ("NIBIN");

G.     Does not prohibit law enforcement officers from having municipal, county or state officers designated or working as a Task Force Officer ("TFO");

H.     Does not prohibit a municipality or county from entering into a Memorandum of Understanding ("MOU") with a Federal Task Force;

I.     Does not prohibit the participation in or filling a seat on a governing board of a drug task force or any local task force with a federal nexus/partnership and associating MOUs; and

J.     Does not prohibit a municipality or county from aiding a federal Task Force in any way.

## COUNT II
## DECLARATORY JUDGMENT AS TO SECTION 1.470.1

37.    Plaintiff realleges and incorporates by reference the allegations set forth in the preceding Paragraphs 1-36 as if fully set forth herein.

38.    Section 1.470.1 of SAPA states that:

> Any political subdivision or law enforcement agency that knowingly employs an individual acting or who previously acted as an official, agent, employee, or deputy of the government of the United States, or otherwise acted under the color of federal law within the borders of this state, who has knowingly, as defined under section 562.016, after the adoption of this section:
>
> > (1) Enforced or attempted to enforce any of the infringements listed in section 1.420; or
> >
> > (2) Given material aid and support to the efforts of another who enforces or attempts to enforce any of the infringements identified in section 1.420;
>
> shall be subject to a civil penalty of fifty thousand dollars per employee hired by the political subdivision or law enforcement agency.

39.    Despite the provisions in Sections 41.730, and 105.270 RSMo., Section 1.470 of SAPA effectively prohibits the City from employing any individual currently or formerly employed by or affiliated with any agency of the United States federal government, including, but not limited to, those military personnel who risked their lives in service to the State of Missouri and the United States of America.

40.    Such a prohibition places an undue burden on the City and its police department's ability to recruit, hire and retain competent and effective law enforcement officers at a time in which recruiting, hiring and retaining law enforcement officers is exceptionally difficult.

12

**WHERFORE**, premises considered, Plaintiff respectfully requests an order 1) awarding Plaintiff a preliminary injunction and such additional relief as may be necessary to avert the irreparable harm that is likely to occur on a daily basis during the pendency of this action and to present the possibility of effective final relief, and 2) declaring that Section 1.470.1 does not prohibit municipalities or counties from recruiting, hiring and/or retaining as a law enforcement officer any individual currently or formerly employed by or affiliated with any agency of the United States federal government, including military personnel and veterans.

## COUNT III
## DECLARATORY JUDGMENT AS TO SECTION 1.480.1

41.    Plaintiff realleges and incorporates by reference the allegations set forth in the preceding Paragraphs 1-40 as if fully set forth herein.

42.    Section 1.480.1 of SAPA defines a "law-abiding citizen" as a "person who is not otherwise precluded under state law from possessing a firearm and shall not be constructed to include anyone who is not legally present in the United States or the state of Missouri."

43.    However, it is unclear whether SAPA's definition of a "law-abiding citizen" includes a person committing a felony with a firearm because he or she is not illegally in the country and does not have a prior felony which restricts his or her ownership of the firearm.

**WHEREFORE,** the premises considered, Plaintiff prays that the Court issue an order 1) awarding Plaintiff a preliminary injunction and such additional relief as may be necessary to avert the irreparable harm that is likely to occur on a daily basis during the

pendency of this action and to present the possibility of effective final relief, and 2) declaring that the term "law-abiding citizen" shall mean "a person who is not otherwise precluded under state law from possessing a firearm and shall not be construed to include anyone who is not legally present in the United States or the state of Missouri or who is or has committed or who is in the act of committing a crime which is in any way related to or results in law enforcement's interaction with them."

**COUNT IV**
**DECLARATORY JUDGMENT AS TO SECTION 1.408.4**

44.    Plaintiff realleges and incorporates by reference the allegations set forth in the preceding Paragraphs 1-43 as if fully set forth herein.

45.    Section 1.480.4 of SAPA provides that:

It shall not be considered a violation of Section 1.410 to 1.480 to provide material aid to federal prosecution for:

(1) Felony crimes against a person when such prosecution includes weapons violations substantially similar to those found in chapter 570 or chapter 571 so long as such weapons violations are merely ancillary to such prosecution; or

(2) Class A or Class B felony violations substantially similar to those found in chapter 570 when such prosecution includes weapons violations substantially similar to those found in chapter 570 or chapter 571 so long as such weapons violations are merely ancillary to such prosecution.

46.    However, the phrase "merely ancillary" is not defined anywhere in SAPA, thereby making it impossible for the City to determine whether one of its law enforcement officers can aid federal law enforcement and/or federal prosecutors with, for example, the

14

investigation into and/or prosecution of a drug dealer who had his/her illegal guns seized and who has pending federal charges relating to both guns and drugs.

47.     While Section 1.408.4 appears to act as a safe harbor for the City's law enforcement officers, it is virtually impossible for the City and/or its law enforcement officers to determine when and how these safe harbors might apply, leaving the City's law enforcement officers with almost no choice but to avoid *any* involvement with federal agencies or laws.

**WHEREFORE**, the premises considered, Plaintiff prays that the Court issue an order 1) awarding Plaintiff a preliminary injunction and such additional relief as may be necessary to avert the irreparable harm that is likely to occur on a daily basis during the pendency of this action and to present the possibility of effective final relief, and 2) declaring that the phrase "merely ancillary," means "in addition to" as it relates to Section 1.408.4 of SAPA.

By:     /s/ Robert K. Sweeney
    Robert K. Sweeney          #38322
    Allison Sweeney          #62000
    Attorneys for Plaintiff
    P.O. Box 20
    Hillsboro, MO 63050
    rks@robertsweeneylaw.com
    as@robertsweeneylaw.com
    636-797-5600 - voice
    636-797-4900 - fax

fC:\Documents\Arnold\SAPA\Petition.docx

15

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY
## STATE OF MISSOURI

CITY OF ARNOLD,             )
                                     )
             Plaintiff,      )
                                     )     Case No. 22JE-CC00010
             v.               )
                                     )
STATE OF MISSOURI, *et al.*,     )
                                     )
             Defendants.     )

### ANSWER AND AFFIRMATIVE DEFENSES TO THE PETITION

Defendants, by and through counsel, hereby respond to the Petition. Any allegations not expressly admitted are denied. Defendants respond as follows:

### PARTIES

1. Defendants admit the allegations in Paragraph 1 of the Petition.

2. Defendants admit the allegations in Paragraph 2 of the Petition.

3. Defendants admit the allegations in Paragraph 3 of the Petition.

4. Defendants admit the allegations in Paragraph 4 of the Petition.

5. Defendants admit the allegations in Paragraph 5 of the Petition.

6. Defendants admit the allegations in Paragraph 6 of the Petition.

### JURISDICTION AND VENUE

7. Defendants deny that the Court has subject-matter jurisdiction over this action pursuant to the provisions Plaintiff cites in the allegations in Paragraph 7 of the Petition. The Court has subject-matter jurisdiction over this action pursuant to

Article V, § 14 of the Missouri Constitution. *Accord J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 252-54 (Mo. banc 2009).

8. Defendants deny that venue is proper in Jefferson County; venue is proper in Cole County, for the reasons stated in Defendants' Motion to Transfer Venue also filed today.

9. Paragraph 9 asserts legal conclusions to which no response is required. To the extent any response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 and, therefore, deny them.

10. Paragraph 10 asserts legal conclusions to which no response is required. The Declaratory Judgment Act speaks for itself, and Defendants deny any characterization of it.

11. Paragraph 11 asserts legal conclusions to which no response is required. To the extent any response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 and, therefore, deny them.

## ALLEGATIONS COMMON TO ALL COUNTS

12. Paragraph 12 asserts legal conclusions to which no response is required. To the extent any response is required, Defendants admit that the Governor of Missouri signed the Second Amendment Preservation Act, but deny any characterization of SAPA because it speaks for itself.

13. SAPA speaks for itself. Defendants deny any characterization of it. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 13 and, therefore, deny them.

14. Paragraph 14 asserts legal conclusions to which no response is required. To the extent any response is required, SAPA speaks for itself, and Defendants deny any characterization of it. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 14 and, therefore, deny them.

15. Paragraph 15 asserts legal conclusions to which no response is required. To the extent any response is required, SAPA speaks for itself, and Defendants deny any characterization of it. Section 43.505, RSMo speaks for itself, and Defendants deny any characterization of it. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 15 and, therefore, deny them.

16. Paragraph 16 asserts legal conclusions to which no response is required. To the extent any response is required, SAPA speaks for itself, and Defendants deny any characterization of it. Section 43.505 speaks for itself, and Defendants deny any characterization of it. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 16 and, therefore, deny them.

17. Paragraph 17 asserts legal conclusions to which no response is required. To the extent any response is required, SAPA speaks for itself, and Defendants deny

any characterization of it. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 17 and, therefore, deny them.

18. Paragraph 18 asserts legal conclusions to which no response is required. To the extent any response is required, SAPA speaks for itself, and Defendants deny any characterization of it. The Federal Reemployment Rights Act of 1994 speaks for itself, and Defendants deny any characterization of it. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 18 and, therefore, deny them.

19. Paragraph 19 asserts legal conclusions to which no response is required. To the extent any response is required, SAPA speaks for itself, and Defendants deny any characterization of it. The Federal Reemployment Rights Act of 1994 speaks for itself, and Defendants deny any characterization of it. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 19 and, therefore, deny them.

20. Paragraph 20 asserts legal conclusions to which no response is required. To the extent any response is required, SAPA speaks for itself, and Defendants deny any characterization of it. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 20 and, therefore, deny them.

21. Paragraph 21 asserts legal conclusions to which no response is required. To the extent any response is required, SAPA speaks for itself, and Defendants deny

any characterization of it. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 21 and, therefore, deny them.

22.     Paragraph 22 asserts legal conclusions to which no response is required. To the extent any response is required, SAPA speaks for itself, and Defendants deny any characterization of it. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 22 and, therefore, deny them.

23.     Paragraph 23 asserts legal conclusions to which no response is required. To the extent any response is required, SAPA speaks for itself, and Defendants deny any characterization of it. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 23 and, therefore, deny them.

24.     Paragraph 24 asserts legal conclusions to which no response is required. To the extent any response is required, SAPA speaks for itself, and Defendants deny any characterization of it. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 24 and, therefore, deny them.

25.     Paragraph 25 asserts legal conclusions to which no response is required. To the extent any response is required, SAPA speaks for itself, and Defendants deny any characterization of it. Defendants are without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations in Paragraph 25 and, therefore, deny them.

26.     Paragraph 26 asserts legal conclusions to which no response is required. To the extent any response is required, SAPA speaks for itself, and Defendants deny any characterization of it.  Defendants deny that Plaintiff is entitled to any of the relief requested in the Petition, and respectfully request that the Court enter judgment in Defendants' favor and against Plaintiff.

## COUNT I

27.     Defendants incorporate by reference their answers to the preceding Paragraphs as if set forth at length herein.

28.     SAPA speaks for itself.  Defendants deny any characterization of it.

29.     Paragraph 29 asserts legal conclusions to which no response is required. To the extent any response is required, SAPA speaks for itself, and Defendants deny any characterization of it.   Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 29 and, therefore, deny them.

30.     Paragraph 30 asserts legal conclusions to which no response is required. To the extent any response is required, SAPA speaks for itself, and Defendants deny any characterization of it.  Sections 1.450-.470 of SAPA began to have operative effect on August 28, 2021.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 30 and, therefore, deny them.

6

31.     Paragraph 31 asserts legal conclusions to which no response is required. To the extent any response is required, SAPA speaks for itself, and Defendants deny any characterization of it. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 31 and, therefore, deny them.

32.     Paragraph 32 and subparagraphs A.-C. assert legal conclusions to which no response is required. To the extent any response is required, SAPA speaks for itself, and Defendants deny any characterization of it. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 32 and, therefore, deny them.

33.     Paragraph 33 asserts legal conclusions to which no response is required. To the extent any response is required, SAPA speaks for itself, and Defendants deny any characterization of it. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 33 and, therefore, deny them.

34.     Paragraph 34 asserts legal conclusions to which no response is required. To the extent any response is required, SAPA speaks for itself, and Defendants deny any characterization of it. Section 43.505 speaks for itself, and Defendants deny any characterization of it. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 34 and, therefore, deny them.

7

35.     Paragraph 35 asserts legal conclusions to which no response is required. To the extent any response is required, SAPA speaks for itself, and Defendants deny any characterization of it.   Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 35 and, therefore, deny them.

36.     Paragraph 36 asserts legal conclusions to which no response is required. To the extent any response is required, SAPA speaks for itself, and Defendants deny any characterization of it.   Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 36 and, therefore, deny them.

Defendants deny that Plaintiff is entitled to any of the relief requested in the Petition, and respectfully request that the Court enter judgment in Defendants' favor and against Plaintiff.

## **COUNT II**

37.     Defendants incorporate by reference their answers to the preceding Paragraphs as if set forth at length herein.

38.     SAPA speaks for itself.  Defendants deny any characterization of it.

39.     Paragraph 39 asserts legal conclusions to which no response is required. To the extent any response is required, SAPA, speaks for itself, and Defendants deny any characterization of it.  Sections 41.730 and 105.270, RSMo speak for themselves, and  Defendants  deny  any  characterization  of  them.    Defendants  are  without

8

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 39 and, therefore, deny them.

40.     Paragraph 40 asserts legal conclusions to which no response is required. To the extent any response is required, SAPA speaks for itself, and Defendants deny any characterization of it.   Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 40 and, therefore, deny them.

Defendants deny that Plaintiff is entitled to any of the relief requested in the Petition, and respectfully request that the Court enter judgment in Defendants' favor and against Plaintiff.

## <u>COUNT III</u>

41.     Defendants incorporate by reference their answers to the preceding Paragraphs as if set forth at length herein.

42.     SAPA speaks for itself.  Defendants deny any characterization of it.

43.     Paragraph 43 asserts legal conclusions to which no response is required. To the extent any response is required, SAPA speaks for itself, and Defendants deny any characterization of it.   Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 43 and, therefore, deny them.

Defendants deny that Plaintiff is entitled to any of the relief requested in the Petition, and respectfully request that the Court enter judgment in Defendants' favor and against Plaintiff.

## COUNT IV

44.     Defendants incorporate by reference their answers to the preceding Paragraphs as if set forth at length herein.

45.     SAPA speaks for itself.  Defendants deny any characterization of it.

46.     Paragraph 46 asserts legal conclusions to which no response is required. To the extent any response is required, SAPA speaks for itself, and Defendants deny any characterization of it.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 46 and, therefore, deny them.

47.     Paragraph 47 asserts legal conclusions to which no response is required. To the extent any response is required, SAPA speaks for itself, and Defendants deny any characterization of it.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 47 and, therefore, deny them.

Defendants deny that Plaintiff is entitled to any of the relief requested in the Petition, and respectfully request that the Court enter judgment in Defendants' favor and against Plaintiff.

10

## DEFENSES AND AFFIRMATIVE DEFENSES

The following defenses and affirmative defenses to the Petition warrant a judgment in Defendants' favor and against Plaintiff:

1. The Petition fails to state a plausible claim for declaratory relief because Plaintiff cannot demonstrate the existence of a justiciable controversy.

2. The Petition fails to state a plausible claim for declaratory relief because Plaintiff has adequate remedies at law.

3. The Petition fails to state a plausible claim for declaratory relief because the Declaratory Judgment Act, in and of itself, does not create a private right of action.

4. The Petition fails to state a plausible claim for declaratory relief because even if Plaintiff has freestanding claims under the Declaratory Judgment Act, its claims fail on the merits as a matter of law.

5. Because the Petition fails to state a plausible claim for declaratory relief, the Petition fails to state a plausible claim for injunctive relief.

6. Plaintiff's claims are barred, in whole or in part, by the doctrine of sovereign immunity.

7. Defendants incorporate by reference each and every additional affirmative defense that may be uncovered or made known during the investigation and discovery in this case. Defendants specifically reserve the right to amend their Answer to the Petition to include additional affirmative defenses at the time they are discovered.

11

WHEREFORE, having fully answered, Defendants respectfully request that the Court enter judgment in Defendants' favor and against Plaintiff, and for such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

**ERIC S. SCHMITT**
Attorney General of Missouri

*/s/ Jesus A. Osete*
JESUS A. OSETE, #69267
*Deputy Attorney General*

Office of the Attorney General
Supreme Court Building
207 W. High St.
P.O. Box 899
Jefferson City, MO 65102
(573) 751-1800
(573) 751-0774
Jesus.Osete@ago.mo.gov

*Counsel for Defendants*

12

Electronically Filed - Jefferson - February 28, 2022 - 05:01 PM

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2022, the foregoing was filed through

the Missouri Case.net e-filing system, which will send notice to all counsel of record.

/s/      *Jesus A. Osete*
Deputy Attorney General

*Counsel for Defendants*

13