**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:22-cv-4022-BCW |
| | ) | |
| THE STATE OF MISSOURI *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**SUGGESTIONS IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................................. 1

STANDARD OF REVIEW ................................................................................................... 3

ARGUMENT ........................................................................................................................ 3

I.    Defendants' Motion Was Improperly Filed as a Second Successive Motion to Dismiss in Violation of Rule 12(g)(2). ........................................................................ 3

II.   H.B. 85 Unconstitutionally Purports to Nullify Federal Firearm Laws. ........................... 4

III.  H.B. 85 Affirmatively Regulates and Interferes with the Federal Government's Ability to Enforce Federal Law. ................................................................................... 8

IV.   The United States Has Successfully Pled a Claim Under Preemption............................14

CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

Cases

*Anderson v. Carkins*,
135 U.S. 483 (1890)..................................................................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................3

*Ayco Farms, Inc. v. Ochoa*,
No. SACV1401675JLSANX, 2015 WL 12766165 (C.D. Cal. Mar. 27, 2015).........................4

*Civil Serv. Comm'n of the City of St. Louis v. Members of Bd. of the Aldermen of the City of St. Louis*,
92 S.W.3d 785 (Mo. banc 2003).................................................................................6

*Colorado v. Nord*,
377 F. Supp. 2d 945 (D. Colo. 2005).........................................................................10

*Cooper v. Aaron*,
358 U.S. 1 (1958)...................................................................................................7, 8

*Davis v. Michigan Dep't of the Treasury*,
489 U.S. 803 (1989)...............................................................................................13

*Doe v. Vill. Resorts, Ltd.*,
No. 10-CV-80777, 2011 WL 13227870 (S.D. Fla. May 24, 2011).........................................4

*Emery v. Wal-Mart Stores, Inc.*,
976 S.W.2d 439 (Mo. banc 1998)...............................................................................6

*Espinoza v. Mont. Dep't of Revenue*,
140 S. Ct. 2246 (2020).............................................................................................9

*Horne v. Dep't of Agric.*,
576 U.S. 350 (2015)................................................................................................9

*Leyse v. Bank of Am. Nat. Ass'n*,
804 F.3d 316 (3d Cir. 2015)......................................................................................4

*Mantia v. Mo. Dep't of Transp.*,
529 S.W.3d 804 (Mo. banc 2017)...............................................................................6

*Massachusetts v. Mellon*,
262 U.S. 447 (1923)...............................................................................................14

*McShane Constr. Co. v. Gotham Ins. Co.*,
867 F.3d 923 (8th Cir. 2017).....................................................................................3

Case 2:22-cv-04022-BCW   Document 33   Filed 03/28/22   Page 3 of 21

*M'Culloch v. Maryland,*
   17 U.S. (4 Wheat.) 316 (1819) .................................................................................9, 11

*Mille Lacs Band of Chippewa Indians v. State of Minn.,*
   124 F.3d 904 (8th Cir. 1997) ....................................................................................2, 12

*New York v. United States,*
   505 U.S. 144 (1992) .................................................................................................11, 12

*North Dakota v. United States,*
   495 U.S. 423 (1990) ............................................................................................2, 12, 13

*Northstar Battery Co., LLC v. EnXergy, LLC,*
   No. 6:18-CV-03065-MDH, 2018 WL 5284618 (W.D. Mo. Oct. 24, 2018) ............................ 3

*Printz v. United States,*
   521 U.S. 898 (1997) ....................................................................................................2, 11

*Priorities USA v. State,*
   591 S.W.3d 448 (Mo. banc 2020) .................................................................................... 7

*Shooting Sports Ass'n v. Holder,*
   727 F.3d 975 (9th Cir. 2013) .........................................................................................15

*Smith v. Cent. Platte Nat. Res. Dist.,*
   735 F. App'x 227 (8th Cir. 2018) ..................................................................................... 3

*State ex rel. Goldsworthy v. Kanatzar,*
   543 S.W.3d 582 (Mo. 2018) ......................................................................................1, 5, 6

*Sun Aviation, Inc. v. L-3 Commc'ns Avionics Sys., Inc.,*
   533 S.W.3d 720 (Mo. banc 2017) .................................................................................... 5

*Timlin v. Myers,*
   980 F. Supp. 1100 (C.D. Cal. 1997) ...............................................................................13

*United States v. City of Arcata,*
   629 F.3d 986 (9th Cir. 2010) .........................................................................................12

*United States v. Cox,*
   906 F.3d 1170 (10th Cir. 2018) .....................................................................................15

*United States v. Louisiana,*
   364 U.S. 500 (1960) ......................................................................................................14

*Whitney v. Guys, Inc.,*
   700 F.3d 1118 (8th Cir. 2012) ......................................................................................... 3

Statutes

18 U.S.C. § 923(g)(1)(A) ................................................................................14

18 U.S.C. §§ 921–24 ......................................................................................14

26 U.S.C. § 5841 ............................................................................................14

26 U.S.C. §§ 5811–22 ....................................................................................14

28 U.S.C. §§ 561(f) ........................................................................................10

Mo. Rev. Stat. §§ 1.410–.485 ...............................................................passim

Mo. Rev. Stat. § 115.646 ...........................................................................2, 11

Mo. Rev. Stat. § 188.205 ...........................................................................2, 11

Rules

Fed. R. Civ. P. 12(g)(2) ...............................................................................1, 3

Fed. R. Civ. P. 12(h) .......................................................................................4

Fed. R. Civ. P. 12(h)(1) ..................................................................................3

Fed. R. Civ. P. 12(h)(3) ..................................................................................4

Regulations

27 C.F.R. § 478.124.......................................................................................15

Other Authorities

Fed. Prac. & Proc. Civ. § 1384 (3d ed. 2014) ...............................................3

# INTRODUCTION

Defendants improperly filed this second successive motion to dismiss in violation of Federal Rule of Civil Procedure 12(g)(2). To comport with the Federal Rules and avoid piecemeal litigation, this Court should simply deny Defendants' 12(b)(6) motion and consider Defendants' merits arguments in connection with the United States' Motion for Summary Judgment, ECF No. 8. This is especially so given that Defendants' 12(b)(6) motion overlaps significantly with the arguments in the United States' Motion for Summary Judgment.

Even assuming the Court considers Defendants' motion now, it is meritless. The plain language of H.B. 85 nullifies several broad categories of federal firearm laws and regulates federal authority in contravention of the United States Constitution. Yet Defendants interpret H.B. 85 in a manner divorced from the text of the statute. In apparent recognition that a State cannot nullify federal law, Defendants assert that the first half of H.B. 85 is merely an abstract expression of the Missouri General Assembly's interpretation of the Second Amendment, devoid of any independent, affirmative effect. But "[t]he legislature is presumed to have intended every word, provision, sentence, and clause in a statute to be given effect," *State ex rel. Goldsworthy v. Kanatzar*, 543 S.W.3d 582, 585 (Mo. 2018), and the plain language of these provisions creates affirmative rights and obligations. Specifically, these provisions purport to negate federal authority, preclude anyone (including federal officials) from enforcing federal firearm laws, and expressly impose a "duty" on state and local law enforcement personnel to "protect" against the allegedly infringing federal firearm laws. These provisions are therefore substantive, and they unlawfully interfere with the Federal Government's execution of its duties in contravention of the Supremacy Clause.

Similarly, in apparent recognition that a State can neither regulate the Federal Government directly nor discriminate against the Federal Government, Defendants argue that the second half

1

of H.B. 85 merely prohibits the use of state resources to enforce federal law. But Defendants' argument bears no relationship to the text of H.B. 85. Nearly every provision of H.B. 85 expressly either regulates or discriminates against federal authority. *See North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality op.) (holding that a state law is invalid when it "regulates the United States directly or discriminates against the Federal Government or those with whom it deals"). For example, the ban on hiring former federal employees who previously enforced certain federal firearm laws cannot be understood as Missouri simply declining to assist in the enforcement of federal firearm laws themselves. And when the Missouri General Assembly intends only to prohibit the use of state resources, it says so. *See, e.g.*, Mo. Rev. Stat. § 188.205 ("It shall be unlawful for any public funds to be expended for the purpose of performing or assisting an abortion[.]"); § 115.646 ("No contribution or expenditure of public funds shall be made directly by any officer, employee or agent of any political subdivision" concerning certain elections). Moreover, Defendants' reliance on *Printz v. United States*, 521 U.S. 898 (1997), is misplaced. Unlike in *Printz*, "[t]here is no federal law commanding state regulation here." *Mille Lacs Band of Chippewa Indians v. State of Minn.*, 124 F.3d 904, 928 (8th Cir. 1997), *aff'd sub nom. Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172 (1999). And *Printz* offers no harbor for a State attempting to regulate the Federal Government or otherwise interfere with the Federal Government's own activities, as H.B. 85 does here.

## FACTUAL AND PROCEDURAL BACKGROUND

This brief incorporates the same factual and procedural background as the United States' concurrently filed brief in opposition to Defendants' Rule 12(b)(1) motion. Notably, after the United States filed its Complaint, the State responded by concurrently filing two separate motions to dismiss: one for lack of subject matter jurisdiction, ECF No. 13, and one for failure to state a

claim, ECF No. 16 ("Mem.").

STANDARD OF REVIEW

"To survive a 12(b)(6) motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *McShane Constr. Co. v. Gotham Ins. Co.*, 867 F.3d 923, 927 (8th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

ARGUMENT

**I.     Defendants' Motion Was Improperly Filed as a Second Successive Motion to Dismiss in Violation of Rule 12(g)(2).**

Defendants filed two successive motions to dismiss in violation of Rule 12(g)(2). Rule 12(g)(2) states, "a party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2); *see also* Fed. R. Civ. P. 12(h)(1) ("A party waives any defense listed in Rule 12(b)(2)–(5) by . . . omitting it from a motion in the circumstances described in Rule 12(g)(2)."). As such, "[t]he right to raise these defenses by preliminary motion is lost when the defendant neglects to consolidate them in his initial motion." Charles Alan Wright & Arthur R. Miller, 5C Fed. Prac. & Proc. Civ. § 1384 (3d ed. 2014); *see also, e.g.*, *Northstar Battery Co., LLC v. EnXergy, LLC*, No. 6:18-CV-03065-MDH, 2018 WL 5284618, at *1–2 (W.D. Mo. Oct. 24, 2018) (striking second motion to dismiss under Rule 12(g)(2)); *cf. Smith v. Cent. Platte Nat. Res. Dist.*, 735 F. App'x 227, 228 (8th Cir. 2018) (allowing consideration of successive motion to dismiss only because defenses in second motion "all had been asserted in an earlier motion to dismiss"). "This 'consolidation rule' is intended 'to eliminate unnecessary delay at the pleading

stage' by encouraging 'the presentation of an omnibus pre-answer motion in which the defendant advances every available Rule 12 defense' simultaneously rather than 'interposing these defenses and objections in piecemeal fashion.'" *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 320 (3d Cir. 2015) (quoting Charles Alan Wright & Arthur R. Miller, 5C Fed. Prac. & Proc. Civ. § 1384 (3d ed. 2014)).[1]

In response to successive motions to dismiss filed concurrently, district courts have stricken or denied the second motion to dismiss under Rule 12(g)(2). *See, e.g.*, *Doe v. Vill. Resorts, Ltd.*, No. 10-CV-80777, 2011 WL 13227870, at *1 (S.D. Fla. May 24, 2011); *Ayco Farms, Inc. v. Ochoa*, No. SACV1401675JLSANX, 2015 WL 12766165, at *1 (C.D. Cal. Mar. 27, 2015). This court, in its discretion to control its docket and so as to prevent piecemeal litigation moving forward, should deny Defendants' second successive motion to dismiss bringing merits arguments under Rule 12(b)(6). Instead, the Court should simply address the merits in connection with the arguments the parties elect to make in the ongoing summary judgment briefing, which involves the same issues. This result would also avoid the need to consider separate, piecemeal motions pertaining to the merits, which would be more efficient for both the parties and the Court.

## II.     H.B. 85 Unconstitutionally Purports to Nullify Federal Firearm Laws.

Even assuming the Court considers Defendants' motion now, it is meritless. Defendants' interpretation of the first four provisions of H.B. 85 as merely "declaratory" is contrary to H.B. 85's plain intent to nullify federal firearm laws. "The primary goal of statutory interpretation is to

---

[1] Defendants' second successive motion to dismiss does not fall under the narrow exceptions provided in Rule 12(h)(2) or (3). Defendants expressly bring this motion under Rule 12(b)(6), not pursuant to a pleading allowed or ordered under Rule 7(a); or under Rule 12(c); or at trial. *See* Fed. R. Civ. P. 12(h). Nor does this motion allege that this Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

give effect to legislative intent, which is most clearly evidenced by the plain text of the statute." *Davis v. Buchanan Cty., Missouri*, 5 F.4th 907, 909–10 (8th Cir. 2021) (quoting *State ex rel. Goldsworthy*, 543 S.W.3d at 585). When a statute does not define a term, the court "give[s] the term its 'plain and ordinary meaning as found in the dictionary.'" *Id.* (quoting *Sun Aviation, Inc. v. L-3 Commc'ns Avionics Sys., Inc.*, 533 S.W.3d 720, 723 (Mo. banc 2017)).

In apparent recognition that a State cannot nullify federal law, Defendants contend that H.B. 85 §§ 1.410 through 1.440 are merely "declaratory provisions" with no independent, affirmative effect. Mem. 8 ("It is the Second Amendment which invalidates [the relevant federal firearm laws,] not the Missouri General Assembly."). But "[t]he legislature is presumed to have intended every word, provision, sentence, and clause in a statute to be given effect," *State ex rel. Goldsworthy*, 543 S.W.3d at 585, and the plain language in these so-called "declaratory" provisions creates affirmative rights and obligations. Specifically, § 1.420 identifies five categories of federal firearm laws that it finds "shall be considered infringements on the [Second Amendment], within the borders of this state." H.B. 85 § 1.420. Section 1.430 finds that those federal firearm laws "shall be invalid to this state, shall not be recognized by this state, shall be specifically rejected by this state, and shall not be enforced by this state." *Id.* § 1.430. Section 1.440 then imposes a "duty" on "the courts and law enforcement agencies of this state to protect the rights of law-abiding citizens . . . from the infringements defined under section 1.420." *Id.* § 1.440. This language is not an abstract expression of Missouri's interpretation of the Second Amendment, but rather an imposition of rights and obligations upon Missouri citizens, the State of Missouri, and the courts and law enforcement agencies of Missouri.

Indeed, the legislature will not be presumed to have "inserted idle verbiage or superfluous

language in a statute." *Civil Serv. Comm'n of the City of St. Louis v. Members of Bd. of the Aldermen of the City of St. Louis*, 92 S.W.3d 785, 788 (Mo. banc 2003). Thus, the Missouri General Assembly cannot be presumed to have enacted three separate provisions "declaring" the same thing: that the Second Amendment invalidates the relevant federal firearm laws. *See State ex rel. Goldsworthy*, 543 S.W.3d at 585 ("The plain and ordinary meaning of the words in a statute is determined from the words' usage in the context of the entire statute." (citing *Mantia v. Mo. Dep't of Transp.*, 529 S.W.3d 804, 809 (Mo. banc 2017))). Rather, the respective language in these three provisions—deeming several broad categories of federal firearm laws to be "infringements," H.B. 85 § 1.420; "invalid[ing]," "reject[ing]," and ordering the state to not "enforce[]" the federal firearms laws, *id*. § 1.430; and imposing a "duty" upon "courts and law enforcement" to "protect" citizens from the federal firearms laws, *id*. § 1.440—must be interpreted to purport to do exactly that. *See Emery v. Wal-Mart Stores, Inc.*, 976 S.W.2d 439, 449 (Mo. banc 1998) ("The court should regard the statute as meaning what it says.").

Section 1.420 in particular must be interpreted to have affirmative effect because both § 1.430 and § 1.440—as well as the remaining provisions of H.B. 85 that Missouri admits are "substantive," Mem. 9—necessarily rely on the list of federal firearm laws invalidated in § 1.420. Without § 1.420, the remaining provisions would be "idle verbiage or superfluous language" that repeatedly and emptily declare that the state, courts, and law enforcement must adhere to the law. *Civil Serv. Comm'n of the City of St. Louis*, 92 S.W.3d at 788. Thus § 1.420's list of "infring[ing]" federal firearm laws is not an abstract expression regarding the meaning of the Second Amendment—rather, it is inextricably linked to the affirmative duties and obligations imposed by the

remaining provisions.[2]

Had the Missouri General Assembly wished to enact truly "declaratory" provisions, it could easily have done so using plain language. Indeed, it did so in the introductory provision of § 1.410, which uses no affirmative language and imposes no rights or obligations. The provision speaks only in generalities and does not cross-reference any other provision within H.B. 85. It simply lays the rhetorical groundwork for the affirmative language in the following provisions by "find[ing] and declar[ing]" Missouri's commitment to "support and defend the Constitution of the United States," H.B. 85 § 1.410, and summarizing rhetoric on states' rights (albeit rhetoric long outdated and expressly rejected by the Supreme Court, *see Cooper v. Aaron*, 358 U.S. 1, 18–19 (1958)).

Moreover, these provisions demonstrably are not merely abstract, interpretative expressions because they have real-world effects, as alleged in the Complaint (and as addressed more fully in the United States' Motion for Summary Judgment, ECF No. 8 at Statement of Undisputed Material Facts ¶¶ 50–75). In particular, state and local law enforcement agencies' withdrawal of personnel from joint federal-state-local task forces, Compl. ¶¶ 51–55, and limitations on sharing information with the Federal Government, *id.* ¶¶ 56–64, are attributable both to § 1.430's provision that the federal firearm laws in § 1.420 "shall be invalid to this state, shall not be recognized by this state, shall be specifically rejected by this state, and shall not be enforced by this state," H.B.

---

[2] The Court need not consider severability at this stage because, although Defendants include a footnote on severability, *see* Mem. 10 n.1, they do not argue that any of the United States' claims should be dismissed as a result of severability. In any event, for the reasons explained in the United States' Motion for Summary Judgment, ECF No. 8 at 24–26, all of the provisions of H.B. 85 are inextricably intertwined with the core, unlawful nullification premise of § 1.420. *See Priorities USA v. State*, 591 S.W.3d 448, 456 (Mo. banc 2020) (explaining that the severability analysis hinges on "whether, after separating the invalid portions [of the statute], the remaining portions are in all respects complete and susceptible of constitutional enforcement").

85 § 1.430, and to § 1.440's imposition of a "duty" upon "courts and law enforcement" to "protect" citizens from those same federal firearm laws, *id*. § 1.440. Similarly, the entire nullification premise of §§ 1.420, 1.430, and 1.440 has generated confusion across law enforcement officers, the regulated community of Federal Firearms Licensees, and the public at large, all of whom are obligated to comply with federal firearm laws. Compl. ¶¶ 70–75.

Accordingly, the plain meaning of H.B. 85 §§ 1.420 through 1.440 is to nullify and invalidate federal firearm laws within the state of Missouri in violation of the Supremacy Clause. As discussed in the United States' Motion for Summary Judgment, ECF No. 8 at 19–20, that plain meaning is unconstitutional, as states have no authority to nullify federal law. U.S. Const., art. VI, cl. 2 ("This Constitution, and the laws of the United States which shall be made in pursuance thereof . . . shall be the supreme Law of the Land," the "Laws of any State to the Contrary notwithstanding."); *Anderson v. Carkins*, 135 U.S. 483, 490 (1890) ("The law of [C]ongress is paramount; it cannot be nullified by direct act of any state, nor the scope and effect of its provisions set at naught indirectly."); *Cooper*, 358 U.S. at 18–19 (reaffirming the "basic principle that the federal judiciary," not any individual state, "is supreme in the exposition of the law of the Constitution").

### III.    H.B. 85 Affirmatively Regulates and Interferes with the Federal Government's Ability to Enforce Federal Law.

Defendants further incorrectly describe the remaining provisions of H.B. 85 as solely prohibiting State personnel and resources from being used to enforce federal laws, *see* Mem. 8, when in actuality H.B. 85 affirmatively interferes with the Federal Government's ability to enforce federal law. As discussed above, the express language of §§ 1.420, 1.430, and 1.440 purports to invalidate and nullify federal firearm law. The language of the remaining provisions—which Defendants acknowledge are "substantive," Mem. 8—is equally unconstitutional.

8

As an initial matter, even Defendants agree that these so-called "substantive" provisions are predicated on the State's attempt to nullify certain federal firearm laws. *See* Mem. at 8 (describing these provisions as being targeted at "the federal laws and regulations that the General Assembly has deemed to be infringe[ments] on the Second Amendment, and are thus contrary to the public policy of this State"). As the authority cited above demonstrates, however, states lack authority to nullify federal law, and that defect extends to the substantive provisions, which are inextricably linked to that nullification purpose. Whatever a State's ultimate goals, it cannot employ plainly unconstitutional means to achieve them. *See Horne v. Dep't of Agric.*, 576 U.S. 350, 362 (2015) ("[T]he means [a government] uses to achieve its ends must be 'consist[ent] with the letter and spirit of the constitution.'" (quoting *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 421 (1819))); *cf., e.g., Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246, 2262 (2020) (invalidating State's decision to eliminate a particular educational program even though that decision was otherwise within the State's authority, "[b]ecause the elimination of the program flowed directly from the Montana Supreme Court's failure to follow the dictates of federal law" and thus "cannot be defended as a neutral policy decision").

The text of these provisions further confirms their unconstitutionality. Section 1.450 provides that "*no* entity or person, including any public officer or employee of this state or any political subdivision of this state, shall have the authority to enforce or attempt to enforce any" of the federal firearm laws "as described under section 1.420." H.B. 85 § 1.450 (emphasis added). This provision expressly encompasses all entities and persons, including federal officials. Even were the provision limited to state officials, it would still prohibit federally deputized task force officers from wielding their federal authority to enforce federal law. As explained in the United States' Motion for Summary Judgment, ECF No. 8 at 27, task force officers enforce federal laws in their

federal capacity based on federal authority—not state authority—and Missouri has no ability to limit that authority, *see* 28 U.S.C. §§ 561(f), 566(c) (providing that once state and local officials are properly deputized, they are bestowed with federal authority); *see also, e.g.*, *Colorado v. Nord*, 377 F. Supp. 2d 945, 949 (D. Colo. 2005) (collecting cases for the proposition that "[c]ourts have consistently treated local law enforcement agents deputized as federal agents and acting as part of a federal task force as federal agents"). And indeed, as the United States has alleged, many law enforcement agencies across Missouri have interpreted H.B. 85 as limiting the ability of task force officers to enforce federal law. Compl. ¶¶ 51–57.

The civil penalty scheme of §§ 1.460 and 1.470 also applies to all "law enforcement agenc[ies]" and all persons, including federal agencies employing federal officials. Section 1.460 provides for an injunction against, and a $50,000 fine "per occurrence" on, "[a]ny political subdivision or law enforcement agency that employs a law enforcement officer" who knowingly participates in the enforcement of any of the purportedly infringing federal firearm laws. H.B. 85 § 1.460. Similarly, § 1.470 provides for an injunction against, and a $50,000 fine "per employee" on, "[a]ny political subdivision or law enforcement agency that knowingly employs an individual acting or who previously acted as an official, agent, employee, or deputy of the government of the United States, or otherwise acted under the color of federal law within the borders of this state," who knowingly participates in the enforcement of any of the purportedly infringing federal firearm laws. *Id*. § 1.470. The express terms of §§ 1.460 and 1.470 thus operate to ban any current or former federal officials and TFOs who have participated in enforcing federal firearm laws from employment with "[a]ny political subdivision or law enforcement agency" in Missouri. *Id*. §§ 1.460, 1.470.

Had the Missouri General Assembly intended to merely prohibit the use of State personnel

and resources to enforce federal law, it would have done so expressly. Indeed, the Missouri General Assembly has shown it knows how to do so. *See*, *e.g.*, Mo. Rev. Stat. § 188.205 ("It shall be unlawful *for any public funds to be expended* for the purpose of performing or assisting an abortion[.]" (emphasis added)); *id.* § 115.646 ("No *contribution or expenditure of public funds* shall be made directly by any officer, employee or agent of any political subdivision" concerning certain elections (emphasis added)).

H.B. 85 cannot be justified with reference to *Printz v. United States*, 521 U.S. 898, 935 (1997). In *Printz*, the Supreme Court held "that Congress cannot compel the States to enact or enforce a federal regulatory program." *Id.* at 935 (striking portions of the Brady Handgun Violence Prevention Act that required chief law enforcement officers to conduct backgrounds checks on prospective handgun purchases); *see also New York v. United States*, 505 U.S. 144, 188 (1992) (striking portions of federal radioactive waste regulatory program that required states to accept ownership of waste or regulate according to instructions of Congress). But as Defendants explained in their Motion for Summary Judgment, ECF No. 8 at 22, *Printz* does not support what the State has attempted to do here through H.B. 85: treat federal law as a nullity, impose a "duty" on state employees to "protect" against the exercise of valid federal authority, reject the federal government's own authority to enforce federal law, and enact civil penalties that affirmatively interfere with and discriminate against those who lawfully exercise federal authority. The Federal Government may not commandeer state and local officials, but conversely state and local law may not seek to nullify and interfere with federal authority in such a manner. *See, e.g.*, *M'Culloch*, 17 U.S. (4 Wheat.) at 322 ("[S]tates have no power . . . to retard, impede, burden, or in any manner control the operations of the constitutional laws enacted by [C]ongress to carry into effect the powers vested in the national government.").

This lawsuit is not about "commandeering" Missouri. Indeed, "*Printz* is not relevant to the decision in this case" because "[t]here is no federal law commanding state regulation here." *Mille Lacs Band of Chippewa Indians*, 124 F.3d at 928. Rather, this case "involve[s] no more than an application of the Supremacy Clause's provision that federal law 'shall be the supreme Law of the Land,' enforceable in every state." *New York*, 505 U.S. at 178. The United States seeks only to protect the lawful exercise of federal authority against the affirmative interference and penalties imposed by H.B. 85. As the United States has alleged, H.B. 85 infringes on that sovereign exercise of federal authority by purporting to nullify federal firearm laws, by prohibiting even those with federal authority from enforcing federal firearm laws, by restricting federal access to information necessary to investigate and prosecute federal firearm laws violations, and by erecting obstacles to the enforcement of federal firearm laws. Compl. ¶¶ 48–75.

Furthermore, *Printz* casts no doubt on the proposition that, where a State "regulates the United States directly or discriminates against the Federal Government or those with whom it deals," it violates the Supremacy Clause. *North Dakota*, 495 U.S. at 435. Notwithstanding Defendants' attempt to portray H.B. 85 as "merely prohibit[ing] state personnel and resources from being used to enforce the federal laws" deemed to be infringements, Mem. 9, the actual text of H.B. 85's provisions confirms its expansive design to affirmatively interfere with the Federal Government's own activities and authorities. By ordering that "no entity or person"—including federal officials—may enforce the relevant federal firearm laws, § 1.450 constrains the conduct of federal officials and task force officers and thereby directly regulates the Federal Government. *See United States v. City of Arcata*, 629 F.3d 986, 991 (9th Cir. 2010) ("By constraining the conduct of federal agents and employees, the ordinances seek to regulate the government directly."); Compl. ¶ 43. By declaring federal firearm laws "invalid" and imposing a "duty" on state law enforcement to

"protect" against "the infringements defined under section 1.420," §§ 1.430 through 1.450 unconstitutionally interfere with and further constrain the conduct of federally deputized task force officers. Compl. ¶¶ 52–54. By restricting law enforcement officers from sharing information with the Federal Government—and *only* the Federal Government, not with any other states' law enforcement agencies, even if those states have firearm laws identical to the United States'—H.B. 85 discriminates against the Federal Government. Compl. ¶¶ 85–86.

H.B. 85 also discriminates against "those with whom [the Federal Government] deals." *North Dakota*, 495 U.S. at 435. By barring those who have enforced the relevant federal firearm laws from employment with "[a]ny political subdivision or law enforcement agency," §§ 1.460 and 1.470 discriminate against the Federal Government by imposing a unique disadvantage upon former federal officials and TFOs. *See Timlin v. Myers*, 980 F. Supp. 1100, 1107 (C.D. Cal. 1997) (applying intergovernmental immunity doctrine to overturn regulation that did not involve direct taxation of federal employee); *Davis v. Michigan Dep't of the Treasury*, 489 U.S. 803, 806–07 (1989) (holding state tax on federal employee retirement benefits violated the doctrine); *North Dakota,* 495 U.S. at 438 ("[A] regulation imposed on one who deals with the Government has as much potential to obstruct government function as a regulation imposed on the government itself.").

Accordingly, H.B. 85 cannot be justified as a lawful prohibition on the use of state personnel and state resources to enforce federal law. The law's actual provisions extend far beyond merely directing state resources. They instead seek to negate federal law and federal authority, to affirmatively interfere with and pose obstacles to the exercise of that federal authority, and to specifically discriminate against and penalize those who do enforce federal law. Contrary to Defendants' attempt to rewrite H.B. 85's terms, such nullification efforts—including blatant obstruction

towards and discrimination against the Federal Government—are not constitutionally protected under *Printz*. That is particularly true when such obstruction and discrimination is motivated by a mistaken belief that certain federal laws violate the Constitution, which Defendants do not even attempt to defend. The Supreme Court has made clear that any theoretical ability of a state legislature to "interpos[e]" itself against federal law "is not a constitutional doctrine," and "[i]f taken seriously, it is illegal defiance of constitutional authority." *United States v. Louisiana*, 364 U.S. 500, 501 (1960) (per curiam) (quotation marks omitted). A State may not nullify federal law under any circumstances, but especially not on the ground that federal law is unconstitutional. *Compare Massachusetts v. Mellon*, 262 U.S. 447, 485–86 (1923) ("[I]t is no part of [a State's] duty or power to enforce [its citizens'] rights in respect of their relations with the federal government.") *with* § H.B. 85 § 1.410.2(4)–(5) (effectively claiming this authority).

## IV.     The United States Has Successfully Pled a Claim Under Preemption.

Defendants assert that the United States "does not, and cannot, identify any . . . specific federal laws that supposedly preempt" H.B. 85. Mem. 7. To the contrary, the United States has alleged many specific provisions of the National Firearms Act (NFA), 26 U.S.C. §§ 5811–22, 5841, and the Gun Control Act (GCA), 18 U.S.C. §§ 921–24, that preempt H.B. 85. Compl. ¶¶ 38–40.

For example, the United States has alleged that H.B. 85's purported invalidation of "[a]ny registration or tracking of firearms," as well as "[a]ny registration or tracking of the ownership of firearms," H.B. 85 §§ 1.420(2)–(3), conflict with the NFA's registration requirements for certain firearms, *see* 26 U.S.C. § 5841, as well as the GCA's recordkeeping requirements for Federal Firearms Licensees, *see* 18 U.S.C. § 923(g)(1)(A) ("Each licensed importer, licensed manufacturer, and licensed dealer shall maintain such records of importation, production, shipment, receipt,

sale, or other disposition of firearms at his place of business."); *see also* 27 C.F.R. § 478.124 (requiring individuals to provide certain information to Federal Firearms Licensees in connection with transfers of firearms). Compl. ¶ 38(a). The United States has also alleged that H.B. 85, by defining its own class of "law-abiding citizens" who are deemed entitled to acquire, possess, and transfer firearms free from federal regulation, is preempted by a broad swath of federal firearm laws concerning registration, licensing, and tracking, as well as by important federal criminal prohibitions on the types of individuals who may possess a firearm and where they may do so. Compl. ¶ 38(b)–(d).

As explained in the United States' Motion for Summary Judgment, ECF No. 8 at 23–24, federal courts across the country have confirmed that federal firearm statutes preempt contrary state law. *See, e.g.*, *Mont. Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 981–83 (9th Cir. 2013) (holding Montana's "Firearms Freedom Act" preempted to the extent it declared the manufacture and sale of unlicensed firearms free from "federal law or federal regulation"); *United States v. Cox*, 906 F.3d 1170, 1189 (10th Cir. 2018) (holding that Kansas's "Second Amendment Protection Act" did not provide a defense to federal firearms prosecution because the State could not "insulate from federal regulation the making, possession, and transfer of firearms within Kansas's borders"). Yet Defendants make no mention of the NFA or the GCA, instead relying solely on their incorrect assertion that H.B. 85 only prohibits state resources from being used to enforce federal law. Accordingly, Defendants fail to show that the United States has failed to state a preemption claim.

## CONCLUSION

For these reasons, the Court should deny Defendants' motion to dismiss under Rule 12(b)(6) and instead address the merits exclusively in the context of the United States' Motion for Summary Judgment, ECF No. 8.s

Dated: March 28, 2022

SAYLER A. FLEMING
United States Attorney
Eastern District of Missouri

TERESA A. MOORE
United States Attorney
Western District of Missouri

/s/ Alan T. Simpson
ALAN T. SIMPSON (Mo. Bar 65183)
Assistant United States Attorney
Western District of Missouri
400 East 9th Street, Room 5510
Assistant United States Attorney
Kansas City, MO 64106
Telephone: (816) 426-3130
Fax: (816) 426-3165
Email: alan.simpson@usdoj.gov

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

BRIAN D. NETTER
Deputy Assistant Attorney General

CRISTEN C. HANDLEY
Counsel, Civil Division

ALEXANDER K. HAAS
Director

DANIEL SCHWEI
Special Counsel

/s/ Cassandra Snyder
DANIEL RIESS
CASSANDRA M. SNYDER
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 451-7729
Fax: (202) 616-8460
Email: cassandra.m.snyder@usdoj.gov