## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:22-CV-04022-BCW |
| | ) | |
| THE STATE OF MISSOURI, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT STATE OF MISSOURI'S EMERGENCY MOTION FOR
## STAY OF JUDGMENT AND INUNCTION PENDING APPEAL

Under Federal Rule of Appellate Procedure 8(a)(1) and the Federal Rules of Civil Procedure, Defendants State of Missouri, Governor Michael Parson, and Attorney General Andrew Bailey, respectfully move this Court to stay pending appeal its judgment and order granting an injunction against the enforcement of the Second Amendment Preservation Act. Doc. 88. In the alternative, Defendants move for a temporary administrative stay to allow the Eighth Circuit to consider a stay pending appeal. Prior to filing, Defendants notified the United States that this motion would be made requesting a ruling within two days.

"When courts declare state laws unconstitutional and enjoin state officials from enforcing them," the "ordinary practice is to suspend those injunctions from taking effect pending appellate review." *Strange v. Searcy*, 135 S. Ct. 940, 940-41 (2015) (Thomas and Scalia, JJ., dissenting from denial of the application for a stay) (collecting cases). This Court has adopted that ordinary practice many times, and it should do so here. *E.g.*, *Org. for Black Struggle v. Ashcroft,* No. 20-cv-4184-BCW, Doc. 68 (Oct. 10, 2022) (granting temporary administrative stay for ruling on appeal by Eighth Circuit). Plaintiff's case and this Court's order are incorrect for two basic

1

reasons: (1) the Second Amendment Preservation Act is enforced by private parties, not state officials; and (2) the Act can be enforced only against *the State* (its agencies and subdivisions), not against the federal government. So at every turn, Plaintiff's case fails.

Because private parties, not state officials, are charged with enforcing this law, the United States has no cause of action and no standing to sue the state or state officials. The Supreme Court made this crystal clear just over one year ago in *Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021), as did the Fifth Circuit just over a year ago when the United States tried to sue Texas over a statute Texas officials did not enforce, *United States v. Texas*, No. 21-50949, 2021 WL 4786458, at *1 (5th Cir. Oct. 14, 2021). Courts may only "enjoin named defendants from taking specified unlawful actions," not "enjoin challenged laws themselves." *Whole Woman's Health*, 142 S. Ct., at 535. But because none of the named defendants can enforce this law against the United States, this Court's injunction runs against the statute itself. Indeed, most of this Court's analysis is dedicated to enjoining *definitional* provisions that cannot be enforced by anyone.

As the Act can be enforced only against Missouri agencies and political subdivisions, not the United States, the United States lacks a cause of action and the preemption arguments fail. The state legislature has well-established authority to decline to participate in federal enforcement under *Printz v. United States*, 521 U.S. 898 (1997). The United States cannot enjoin the statute simply because the United States interprets the Second Amendment differently than the Missouri General Assembly.

In support of this request, Missouri incorporates by reference and reasserts all the evidence and arguments submitted in its prior filings. *See* Docs. 13, 16, 39, 40. Missouri highlights the following points, while also relying on earlier evidence and arguments.

**ARGUMENT**

Injunctive relief is "an extraordinary remedy," and "the burden of establishing the propriety of an injunction is on the movant." *Watkins Inc. v. Lewis*, 346 F.3d 841, 44 (8th Cir. 2003); *Weinberger v. Romero-Barcelo*, 102 S. Ct. 1798, 1803 (1982) ("[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."). "In determining whether to issue a stay pending appeal, we consider four factors: (1) whether the party seeking the stay has demonstrated a strong likelihood of success on the merits; (2) whether the party seeking the stay will be irreparably injured without a stay; (3) whether a stay would substantially injure other parties; and (4) the public's interest." *Org. for Black Struggle v. Ashcroft*, 978 F.3d 603, 607 (8th Cir. 2020) (citing *Brakebill v. Jaeger, 905 F.3d 553, 557* (8th Cir. 2018)) (granting stay pending appeal). All four factors are met here.

**I.     On appeal, the State is likely to succeed on the merits.**

Defendants are likely to succeed on appeal because (1) state officials have no role in enforcing the challenged law, (2) the United States would suffer no injury (and have no cause of action) even if Missouri officials did have that authority, and (3) this Court failed to apply the standard for issuing an injunction.

**A. The federal government lacks standing because state officials do not enforce the law.**

As the Supreme Court made clear just over a year ago, courts have equitable jurisdiction only to "enjoin named defendants from taking specified unlawful actions"; courts have no authority to "enjoin challenged laws themselves." *Whole Woman's Health*, 142 S. Ct. at 535. Yet that is exactly what this Court's order purports to do.

Begin first with this Court's decision to hold §§ 1.420 through 1.440 unconstitutional. The bulk of this Court's analysis is dedicated to declaring these sections unconstitutional. Doc. 88, at

3

14–22. Barely more than 1 page of analysis is devoted to other sections. And yet, as the Missouri Supreme Court has held, these three sections are purely declaratory; they only "contain legislative findings and declarations." *City of St. Louis v. State*, 643 S.W.3d 295, 297 (Mo. 2022) (citing §§ 1.410–.440). Indeed, this Court's opinion acknowledges at least 9 times that these are definitional provisions. Doc. 88, at 15–20, 22. Because these sections are purely declaratory— that is, *incapable* of enforcement by anyone—the Court's declaration that these provisions are unconstitutional is nothing more than an improper injunction against the "laws themselves." *Whole Woman's Health*, 142 S. Ct. at 535; *see Webster v. Reprod. Health Servs.*, 492 U.S. 490, 506 (1989) ("It will be time enough for federal courts to address the meaning of the preamble should it be applied to restrict the activities of appellees in some concrete way.").

This case is thus no different from the recent challenge to the individual mandate of the Affordable Care Act—a mandate amended by Congress to eliminate any enforcement mechanism. There, the Supreme Court held that the plaintiffs did not have standing to sue. As the Supreme Court put it, the "problem lies in the fact that the statutory provision, while it tells them to obtain that coverage, has no means of enforcement." *California v. Texas*, 141 S. Ct. 2104, 2114 (2021). "Because of this, there is no possible Government action that is causally connected to the plaintiffs' injury." *Id.* So too here. Legislative findings and definitions cannot be held unconstitutional, even if this Court thinks that the definitions cause confusion. Doc. 88, at 17–18. The United States has no standing to challenge purely declaratory provisions, and this Court has no jurisdiction to enjoin statutes.

The Court's determination that these provisions are unconstitutional because they "create confusion" (Doc. 88, at 17–18, 21) proves far too much. These legislative finds are no different than if the General Assembly had passed a simple resolution doing nothing other than declare the

4

General Assembly's interpretation of the Constitution. Federal courts may enjoin only specific actions by persons, and "no court may lawfully enjoin the world at large." *Whole Woman's Health*, 142 S. Ct. at 535 (quotation omitted). Courts may not enjoin the statutes themselves, no matter how much confusion the court thinks the text might create.

This Court's holding is no stronger on the next three statutory provisions: sections 1.450–.470. True, these provisions *can* be enforced. But the United States runs into another fatal problem: none of these provisions is enforced by any named defendant. Just like in *Whole Woman's Health*, private parties, not state officials, enforce violations of the Act, so the United States cannot sue the Governor or the Attorney General for relief. And because an injunction "operat[es] in personam" and must be "directed at someone, and govern[ing] that party's conduct," *Nken v. Holder*, 556 U.S. 418, 428 (2009), if the United States cannot sue a Missouri official, then the United States cannot sue the State of Missouri. It is unsurprising that the United States and the decision fails to identify a cause of action that authorizing this suit.

In an attempt to get around this problem, this Court's opinion suggests that the Attorney General *can* enforce SAPA because of a general statute that gives the Attorney General authority to maintain litigation "to protect the rights and interests of the state." Doc.88, at 6. But the Eighth Circuit rejected precisely this argument when confronted with a materially identical Arkansas statute in *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952 (8th Cir. 2015), a case that this Court's opinion does not cite despite Defendants' consistent reliance on it. *Digital Recognition Network* is on all fours. There, as here, the challenged statute "provide[d] for enforcement only through private actions for damages," so the court held that the plaintiffs could not sue state officials. *Id.* at 958. The plaintiffs noted that the Arkansas Attorney General, like the Missouri Attorney General here, had authority to bring suit "in all litigation where the interests

5

of the state are involved." *Id.* (citing Ark. Code § 25-16-703). Even further, the Arkansas Attorney General expressly had "statewide law enforcement jurisdiction and authority." *Id.* (citing Ark. Code § 25-16-713). And yet because the text of the "law at issue" was one "that provides only for private civil enforcement," the Eighth Circuit held that there was no standing to sue the state officials. *Id.* at 960–61. Where the specific statute at issue provided only for private civil enforcement, plaintiffs could not sue state officials by relying on a statute conferring general authority on the Attorney General to represent the state's interests. *Digital Recognition Network* cannot be distinguished, and this Court's opinion makes no attempt to do so.

**B. The federal government fails to state a claim (or even identify a cause of action).**

This Court's opinion, and the arguments by the United States, suffer from yet another fatal flaw: the federal government has not stated a claim, or even identified a cause of action, because the Act at issue can be enforced only against agencies and political subdivisions of Missouri, not the federal government.

SAPA provides an enforcement mechanism only against state entities. Mo. Rev. Stat. §§ 1.460, 1.470. Binding Missouri Supreme Court precedent confirms this: "Sections 1.460 and 1.470 impose civil liability on state political subdivisions and law enforcement agencies." *City of St. Louis*, 643 S.W.3d at 297–98. Nothing in the text extends enforcement against the federal government. Indeed, SAPA explicitly states that it does not prohibit "Missouri officials from accepting aid from federal officials in an effort to enforce Missouri laws," § 1.450, and providing "material aid" to federal officials, including for certain federal prosecutions, § 1.480.

The United States thus has no ground, and no cause of action, to challenge this law. The United States raises three arguments: nullification, preemption, and intergovernmental immunity. Each rests on the assumption that SAPA applies to non-Missouri governmental entities, and all three boil down to an assertion that SAPA is invalid under the Supremacy Clause. But the

6

Supremacy Clause is not the "source of any federal rights," and certainly does not create a cause of action. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–27 (2015). The United States' assumption that SAPA applies to non-Missouri governmental entities is incorrect, as the Missouri Supreme Court has already explained. The Act has been in effect since June 12, 2021. To date, the United States cannot identify a single attempt to bring suit against it, and it never will.

As the United States has conceded and must concede, Missouri has no obligation to enforce federal law and thus owes federal officials no duties. *Printz v. United States*, 521 U.S. 898, 925 (1997) ("Federal Government may not compel the States to implement, by legislation or executive action, federal regulatory programs."); *id.* (questionable statute only constitutional "after assuring ourselves that they did not require the States to enforce federal law."). That dooms the United States' challenge to the first four provisions of SAPA, §§ 1.410–.440, which the Missouri Supreme Court has held only "contain legislative findings and declarations." *City of St. Louis*, 643 S.W.3d at 297. It also dooms the United States' challenge to the remaining provisions, §§ 1.450–.470, which do have practical legal effect, because these provisions apply only against Missouri governmental entities. SAPA thus falls squarely within the scope of *Printz*.

The Court also errs by failing to apply binding precedent from the Missouri Supreme Court construing SAPA. It is long-established that "[t]hat the construction of the statutes of a State by its highest courts, is to be regarded as determining their meaning and generally as binding upon United States courts, cannot be questioned." *Supervisors v. United States*, 85 U.S. 71, 81–82 (1873); *United States v. Adler*, 590 F.3d 581, 584 (8th Cir. 2009) ("[S]ate courts are the ultimate expositors of state law."). The Court's decision fails to discuss the binding interpretation of SAPA, instead deciding *de novo* how each of the provisions applies to non-governmental actors. The Court spends the bulk of its analysis declaring §§ 1.420–.440 unconstitutional, and it does so in

7

ways contrary to Missouri Supreme Court precedent. For example, the Court says that "§ 1.440 effectively imposes an affirmative duty to effectuate an obstacle to federal firearms enforcement within the state," Doc. 88, at 22, but the Missouri Supreme Court has declared § 1.440 (and §§ 1.420–.430) to be nonsubstantive, declaratory provisions only—*i.e.*, provisions that impose no affirmative duty and enable no enforcement at all, *City of St. Louis*, 643 S.W.3d at 297. This Court says that § 1.450 directly regulates the United States, Doc. 88, at 22, but again, the Missouri Supreme Court has said otherwise, *City of St. Louis*, 643 S.W.3d at 297. And even if the Missouri Supreme Court had not already ruled on that issue, § 1.450 simply states "No entity or person, including any public officer or employee of this state or any political subdivision of this state, shall have the authority to enforce or attempt to enforce [certain] federal acts …." Interpreting "entity" to include *federal* entities—as this Court does—is not only an inferior interpretation of the plain text, but it also violates the command for courts to adopt any reasonable interpretation that would avoid constitutional problems. *Dougherty v. White*, 689 F.2d 142, 144 (8th Cir. 1982) ("It has long been the rule that a federal court should not pass on constitutional issues when it is not necessary to do so."). This rule is particularly poignant when the court is "invited to pass upon the constitutional validity of a state statute which has not yet been applied or threatened to be applied by the state courts to petitioners or others in the manner anticipated." *Webster*, 492 U.S. at 506 ((quoting *Alabama State Federation of Labor v. McAdory*, 325 U.S. 450, 465 (1945)). The mandated reading (and better reading) is that "entity" encompasses only *state* entities.

This Court's conclusions about §§ 1.460 and 1.470 fare no better. Again, neither this Court nor the United States has ever identified a cause of action. SAPA limits only the activities of Missouri governmental agencies, not the federal government. The penalties for failing to comply are not assessed against the United States, so there is no discrimination against the federal

government. The Court did not cite any evidence that SAPA would discourage federal law enforcement recruitment efforts, and the United States did not assert this as a basis for intergovernmental immunity in its motion, Doc. 29, at 37–38, or in its reply, Doc. 45.

**C. This Court failed to apply the required four-factor test before granting an injunction.**

Missouri will also likely succeed in convincing the court of appeals that this Court erred by automatically granting an injunction. Nowhere in the Court's order does the Court apply the standard to grant a permanent injunction. Injunctions are not automatic. "[A] federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law." *Weinberger*, 102 S. Ct. at 1803. Instead, a "plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156 (2010). "A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* at 156–57. The Court did not discuss how the United States met that standard, and indeed, the United States devoted only a single page to this analysis. Doc. 8, at 29–30. Failing to apply the proper legal analysis, including by failing to cite controlling precedent, discuss or mention the applicable factors, and make the necessary findings, is clear and reversible error. *See In re Bieter Co.*, 16 F.3d 929, 940 (8th Cir. 1994) ("the district court's error was in its clear failure to apply the proper legal analysis."). Even if the Court's analysis for the declaratory judgment was correct, and it is not, the Court had a duty to assess these four factors and decide whether an injunction should issue against the State.

9

## II. The Balance of Harms and the Public Interest Favor a Stay.

The remaining equitable factors also strongly favor a stay of injunction pending appeal. They are "(2) whether the party seeking the stay will be irreparably injured without a stay; (3) whether a stay would substantially injure other parties; and (4) the public's interest." *Org. for Black Struggle*, 978 F.3d at 607. All these factors decisively favor the State.

### A. Missouri is irreparably injured without a stay.

This Court has taken the momentous step of declaring that a validly passed statute is unconstitutional in all respects, and enjoining its enforcement is de facto irreparable harm. "Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citing *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)). When the State is blocked from implementing its statutes, "the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its law." *Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013); *Coalition for Economic Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997). Here, the General Assembly created a private right for all Missouri citizens. This Court's injunction irreparably harms the interests of Missouri citizens and the General Assembly and thus the State.

### B. The balance of harms and public interest favor Missouri.

The public interest greatly favors Missouri. As the Eighth Circuit recently reaffirmed, "it is in the public interest to uphold the will of the people, as expressed by acts of the state legislature, when such acts appear harmonious with the Constitution." *Pavek v. Donald J. Trump for President, Inc.*, 967 F.3d 905, 909 (8th Cir. 2020) (granting a stay of injunction pending appeal of election procedures).

10

SAPA is harmonious with the Constitution. SAPA exists because "[t]he general assembly of the state of Missouri is firmly resolved to support and defend the Constitution of the United States," Mo. Rev. Stat. § 1.410.2(1), and seeks to ensure that its citizens enjoy their right to bear arms under the Missouri and U.S. Constitutions to the fullest extent, Mo. Rev. Stat. § 1.410.3(9). The Supreme Court's precedent in *Printz* confirms that the Constitution prohibits the federal government from requiring state law enforcement officials to enforce federal firearms laws.

The Court's decision also harms the public interest because it burdens the private rights of Missouri's citizens. SAPA provides causes of actions to law-abiding citizens when Missouri governmental entities infringe on their right to bear arms under not just the federal constitution, but also the state constitution. Mo. Rev. Stat. §§ 1.460, 1.470. The right to keep and bear arms backstops "the liberties of a republic; since it offers a strong moral check against the usurpation and arbitrary power of rulers; and will generally . . . enable the people to resist and triumph over them." 2 J. STORY, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES § 1897, pp. 620–621 (4th ed. 1873). SAPA is a state version of 28 U.S.C. § 1983 to protect this important freedom and empower its citizens. By enjoining Missouri's enforcement of SAPA, the Court has injured law-abiding Missourians' ability to hold their state and local governments accountable.

The United States cannot possibly show that a stay, for the purposes of appeal, would cause any injury, let alone a substantial injury, as the law requires. *First*, the United States failed to show any injury to begin with. The Court noted that the United States' law enforcement operations have been affected, Doc. 88 at 5, but the Court did not show that the United States had a right to subsidize its law enforcement efforts with Missouri law enforcement resources. This is not a cognizable injury, as the United States agreed that States may "lawfully decline to assist with federal enforcement[.]" Doc. 1, at 3. *Second*, after nearly two years, the United States has failed

11

to show any attempted enforcement of SAPA against its own agencies and law enforcement officers. Of course, the Missouri Supreme Court's authoritative reading of SAPA also prevents any such suit. *City of St. Louis*, 643 S.W.3d at 297. *Third*, to the extent that the Court believes there is any confusion about the extent of SAPA, the United States has encouraged such confusion by claiming that SAPA somehow applies to its agencies. It should not receive any benefit for such self-inflicted harms. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) ("Respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.").

This Court has upended the constitutional balance between the federal government and Missouri on a matter central to Missouri's sovereignty: the conduct of Missouri law enforcement agencies. The General Assembly may no longer set the bounds of Missouri law enforcement. The decision is a grave injury, because "[w]hen the Federal Government asserts authority over a State's most fundamental political processes, it strikes at the heart of the political accountability so essential to our liberty and republican form of government." *Alden v. Maine*, 527 U.S. 706, 751 (1999).

## CONCLUSION

Missouri and the state Defendants respectfully request that this Court stay its judgment and injunction pending appeal and issue an immediate temporary administrative stay to allow the Eighth Circuit to rule on a request for a stay pending appeal. The State also respectfully requests a ruling on this Motion within two days, as the injunction in effect nullifies a validly enacted statute, and the State will seek an immediate stay of injunction from the U.S. Court of Appeals for the Eighth Circuit.

12

Respectfully submitted,

**ANDREW BAILEY**
Attorney General

*/s/ Jeff P. Johnson*

Jeff P. Johnson, MO #73294
*Deputy Solicitor General*
Joshua M. Divine, MO # 69875
*Solicitor General*
Office of the Missouri Attorney General
Supreme Court Building
P.O. Box 899
Jefferson City, Missouri 65102
Phone: 314-340-7366
Fax: 573-751-0774
Jeff.johnson@ago.mo.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, on March 8, 2023, the above was filed electronically through the Court's electronic filing system to be served electronically on counsel for all parties.

*/s/ Jeff P. Johnson*

13